NEW YORK LIFE INSURANCE COMPANY *v.* MARY McINTOSH.

1. CONTRACTS. *Meeting of the minds. Insurance.*

Propositions and counter propositions do not make a contract; before either party is bound, the proposition of one of them must be accepted by the other exactly as proposed; there must be a meeting of the minds on the same thing; and this is true of insurance as of other contracts.

2. SAME. *Concrete case.*

Where plaintiff's deceased husband applied for a life policy, paid the amount of the first annual premium, and obtained a receipt, which the company agreed to accept as cash in payment of the first premium, and, if the policy was not issued within sixty days, the amount paid would be returned on surrender of the receipt to the company; and the policy applied for was not issued, but a different policy tendered and refused, and, after certain further evidence of insurability was furnished, a more favorable policy was sent to insurer's agent to be tendered, but, insured being sick at the time, it was never delivered, and insured died soon after, these facts did not establish a meeting of minds, and no contract of insurance was ever effected.

FROM the chancery court of Harrison county.

HON. THADDEUS A. WOOD, Chancellor.

Mrs. McIntosh, the appellee, was complainant, and the insurance company, the appellant, defendant in the court below. From a decree in the complainant's favor the defendant appealed to the supreme court.

The evidence showed that R. McIntosh made an application to appellant for a life insurance policy for the benefit of his wife, appellee, December 31, 1903. He paid the amount of the first annual premium of $392.65, and obtained a receipt therefor. The receipt contained the following stipulation: "If a policy be issued on the application for insurance made by the above this day to the New York Life Insurance Company, corresponding in date and number with this receipt, said company

shall accept this receipt as cash toward the payment of the first premium. If the policy be not issued on said application and examination within sixty days, said sum will be returned on surrender of this receipt to the company." This application was for an accumulation policy. The company, after consideration of the application, declined to issue the policy asked for, but on January 7, 1904, agreed to give McIntosh a policy on the fifteen-year endowment and life-lien plan, which was somewhat different from the one applied for, and sent the policy to the applicant. McIntosh declined to accept this policy, and wrote the company that if it could not issue the policy applied for to return his money. The applicant then furnished further evidence of insurability, and the defendant then decided to offer what it called a fifteen-year endowment policy in the adjustable accumulation class, without lien, which was different from the one formerly offered. This policy was sent to the agent of the company to be tendered to McIntosh. When this last policy was received by the agent, he had learned that McIntosh was sick, and did not deliver it. McIntosh died on the 23d day of February, 1904. The last policy was returned to the company by the agent.

*Ford & White, Rice & Montgomery,* and *James McIntosh,* for appellant.

Acting upon an application for insurance by offering a policy different from the policy applied for, or by imposing any conditions of any kind, is, in law, a rejection of the application, constituting a counter-offer, which cannot become a contract until submitted to and accepted by the applicant.

This is a familiar rule of law. It is the ordinary rule governing the making of all contracts of sale. Your Honors have often referred to and applied it. *Waul* v. *Kirkman,* 27 Miss., 823 ; *Jacobs* v. *Ins. Co.,* 71 Miss., 658.

The text-books all agree upon the necessity of the acceptance of an offer precisely as made in order to constitute a contract.

*Minneapolis & St. Louis R. R. Co.* v. *Columbus Rolling Mill Co.*, 119 U. S., 149, excellently illustrates the application of the rule now under discussion. There the plaintiff wrote the defendant for prices on rails in lots of from 2,000 to 5,000 tons. The defendant answered, giving prices. The plaintiff then wired, "Over 1,200 tons," but the defendant telegraphed back: "We cannot book your order at present at that price." On receipt of this telegram the plaintiff wired: "Please enter order for 2,000 tons rails as per your letter." The defendant made no answer to this and did not deliver the rails. The plaintiff sued for damages, but was defeated. Mr. Justice Gray, delivering the opinion of the court, said: "The rules of law which govern this case are well settled. As no contract is complete without the mutual assent of the parties, an offer to sell imposes no obligation until it is accepted according to its terms. So long as the offer has been neither accepted nor rejected, the negotiation remains open, and imposes no obligation upon either party; the one may decline to accept or the other may withdraw his offer, and either rejection or withdrawal leaves the matter as if no offer had ever been made. A proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation unless the party who made the original offer renews it or assents to the modification suggested. The other party, having once rejected the offer, cannot afterwards revive it by tendering an acceptance of it."

Applying these principles, the court held that the telegram for 1,200 tons of rails was a rejection of the defendant's offer, which the plaintiff could not revive by his subsequent letter accepting the offer as made.

Other cases illustrating the application of this rule are the following: *Carr* v. *Duval*, 14 Pet., 77; *Mutual Life* v. *Young*, 23 Wall., 85; *First National Bank* v. *Hall*, 101 U. S., 43; *Campania*, etc., v. *Light & Power Co.*, 146 U. S., 483; *Harr & Co.* v. *Ship Co.*, 29 U. S. App., 599; *Equitable Life* v. *Mc-*

*Elroy,* 28 C. C. A., 365; *Mohrstadt* v. *Mutual Life,* 52 C. C. A., 675; *Phoenix Ins. Co.* v. *Schultz,* 42 U. S. App., 483; *Hamblet* v. *Ins. Co.,* 36 Fed. Rep., 122; *Jenness* v. *Mount Hope Iron Co.,* 53 Me., 20; *Ocean Ins. Co.* v. *Carrington,* 3 Conn., 357; *Rogers* v. *Chester Oak Life Ins. Co.,* 41 Cinn., 97; *Quinlan* v. *Ins. Co.,* 133 N. Y., 356; *Millville Ins. Co.* v. *Collard,* 38 N. Y., 480; *Myers* v. *Keystone Mut. Life Ins. Co.,* 27 Pa. St., 268; *Tifft* v. *Phoenix Mut. Life,* 6 Lansing, 198; *Michigan Pipe Co.* v. *Ins. Co.,* 92 Mich., 482; *Stevens* v. *Ins. Co.,* 87 Iowa, 283; *Born* v. *Ins. Co.,* 94 N. W., 849; *Stillwell* v. *Covenant Mut. Life,* 82 Mo. App., 215; *Yore* v. *Bankers, etc., Mut. Life,* 88 Cal., 609.

From the decisions of this court, from the text-books, from the decisions of the courts elsewhere, if anything in law can be treated as finally settled, it is that an application for insurance is an offer, and to constitute a contract must be accepted as made; that in acting on it, any variation from its terms, or the imposing of any conditions, is a rejection of the application constituting a counter-offer, which cannot become a contract until submitted to, and unconditionally accepted by, the applicant. Hence, as the counter-offer authorized by the company at the time it reconsidered Mr. McIntosh's application and the conditions attached to that offer never were submitted to, or accepted by, the applicant, the offer did not, and could not, become a contract.

*Harper & Harper,* for appellee.

An accepted application is an agreement to issue the policy. *Lengsfelter* v. *Phoenix Ins. Co.,* 1 West Mo. App., 695. Acts done and information given an employe of an agent in the line of his duty are binding upon the company. *International Trust Co.* v. *Norwich Fire Ins. Co.,* 71 Fed. Rep., 81.

A careful consideration of the above case, which is affirmed in 163 U. S., will not disturb or unsettle the mind of the court in considering the case at bar.

A local insurance agent is presumed to have power coextensive with the business intrusted to his care, and his power will not be narrowed by limitations not communicated with the person to whom he deals. *Bambic* v. *Aetna Ins. Co.,* 2 Dill., 156. Whereby the terms of the policy of a local agent is to countersign it to make it valid, so that the insured must be with him, and no one else, he represents the power of the company so that any policy which he countersigns binds the company so any person injured through his agency who has no notice of the extent of his power, although the agent may have exceeded his authority and violated his duty to his principal. *Fornam* v. *Phoenix Ins. Co.,* 12 Am. St. Rep., 241.

A local agent, having ostensible authority to solicit applications and make the contracts for insurance and to receive first premium, binds his principal by any act or contract within the general scope of his apparent authority, notwithstanding an actual excess of authority.

The tendency of modern decisions has been strongly to hold insurance companies to that degree of responsibility for the acts of their local agents, which they scatter through the country, that justice and a due protection of the people's interests, without regard to private restrictions or to cunning provisions inserted in policies, with a view to elude just responsibilities.

Argued orally by *W. A. White,* for appellant, and by *A. Y. Harper,* and *H. Gardner,* for appellee.

Cox, J., delivered the opinion of the court.

The learned chancellor erred in finding that appellant agreed or contracted with appellee's testator to issue a policy of insurance upon his life in accordance with his written application. It refused his application for a standard policy, and offered him a policy of a lower class. This was declined by him. Appellant then decided to offer him another policy,

which, while better than the one declined by him, was not the policy for which he had applied. He died before he had an opportunity to determine whether he would accept it. Thus it is perfectly evident that the minds of the parties never met, and that no contract for insurance was ever effected.

*Reversed and remanded.*