SAVAGE *v.* PRUDENTIAL LIFE INS. CO. OF AMERICA *et al.*

(Division A. April 8, 1929.)

[121 So. 487. No. 27613.]

*Stovall & Stovall,* of Okolona, for appellant.

*Wells, Jones, Wells & Lipscomb* and *J. Morgan Stevens,* all of Jackson, for appellees.

94

Argued orally by *R. C. Stovall,* for appellant, and *W. Calvin Wells,* for appellees.

McGowen, J., delivered the opinion of the court.

The appellant filed his declaration in the circuit court of Chickasaw county, as administrator of the estate of M. L. Abernathy, deceased, for damages, alleging the combined negligence of the insurance company, and of its agent, Cavett, in carelessly and negligently failing to act upon and approve an application for life insurance by the decedent, M. L. Abernathy, and in carelessly and negligently failing to deliver to the decedent two policies of life insurance while living, or to notify him within a reasonable time whether his application had been accepted or rejected. The declaration

joined the agent, Cavett, and the Prudential Life Insurance Company, as defendants. The damages were laid as being the face value of the policies sued on, with double indemnity for accident, alleging that but for the negligence of the company and its agent this amount would have been received by appellant.

The pleadings of the appellees negative and put in issue all the material allegations of the declaration. The facts necessary to an understanding of this opinion are as follows:

Plaintiff's intestate, M. L. Abernathy, on December 4, 1926, made a written application for two policies of life insurance in the appellee company, in the amount of five thousand dollars each. The applicant was examined on the same date, and the examination was forwarded by the medical examiner to the office of the company at Newark, N. J. The policies applied for in the application  cuted by Abernathy called for the payment of total premiums in the amount of two hundred forty-two dollars and thirty cents, but the company did not accept the application in this respect. On January 10, 1927, it issued two policies on which the premiums amounted to four hundred twenty-six dollars and eighty cents. These policies contained accidental death benefits.

In due course, the policies should have been received by the agent, Cavett, at Columbus, about January 15, 1927, but at that time he was in New Orleans with his son, who had been accidentally hurt by the discharge of a gun. On the morning of January 25, 1927, appellant was found dead in an automobile, with two bullet holes in the right side of his head. This was fifty-two days from the date of the application.

It is shown that several times Abernathy called at the office of the medical examiner to inquire about his insurance. It is also shown that he received money from the sale of hogs, and said he was able to pay for the policies. The doctor explained to him that the agent was

detained because of his son's having been shot in New Orleans.

It was shown that another insurance company, the Pacific, with headquarters in California, a short time before had rejected the application of Abernathy for insurance; and also, on May 1st prior to this application, that the Mutual Life Insurance Company of New York had issued and delivered two policies of insurance.

In the application which the plaintiff's intestate made to the appellee insurance company, we find the following important provision:

"I further agree that the policy herein applied for shall be accepted subject to the privileges and provisions therein contained and that unless the full first premium is paid by me at the time of making this application, the policy shall not take effect until issued by the company and received by me and the full first premium thereon is paid, while my health, habits and occupation are the same as described in this application. It is understood and agreed, however, that if at the time of signing this application the full premium is paid, the insurance shall take effect from the date of this application, in accordance with the provisions of the policy hereby applied for, provided this application is approved and accepted at the Home Office of the company, in Newark, New Jersey, under the plan, for the premium paid and amount of insurance applied for."

When the plaintiff closed his case, the trial court sustained a motion made by the appellee insurance company for a directed verdict, and the jury was accordingly instructed to return a verdict for the appellee, the insurance company, from which the administrator of the estate of deceased prosecutes an appeal to this court.

The case of appellant may be summed up in this statement: That he contends that the proximate cause of the failure of the appellant's intestate to obtain the life insurance policies for ten thousand dollars, which resulted

in damage to his estate in the sum of twenty thousand dollars on account of the accidental death of appellant's intestate, was the negligence of the appellee, its officers and agent, in failing to pass promptly upon the application of appellant's intestate, and to notify him within a reasonable time whether the application had been accepted or rejected; and, in conjunction therewith, the negligence of the agent in failing to deliver the policies issued on January 10th, prior to the death of the appellant's intestate on January 25, 1927.

Appellant is careful to state that this is an action *ex delicto,* not an action *ex contractu.* He does not contend that the minds of the parties had met, or that a contract had been consummated.

Counsel's argument for reversal of the decision of the lower court is based upon the theory that a tort arises from a failure to accept an offer to make a contract within a reasonable time, and that the amount of recovery and the amount of damages shall be measured by the face value of the policy, there being a double indemnity clause in this case; the appellant contending that his intestate died by accident, while the insurance company contends that he came to his death at his own hands by design.

There is a line of authorities in this country which permits a recovery under such circumstances, notwithstanding the fact that no contract had been made, notwithstanding the terms of the application for the policy which we have set forth above, and notwithstanding the general rule that, where one party offers to make a contract with another, and the latter does not either accept or reject within a reasonable time, the proposition is considered to have been declined, because of the failure to accept within a reasonable time.

But it is said by a number of courts that, though an action *ex contractu* may not be maintained, yet, because the insurance company is acting under a franchise from the state, the chartering of such institutions being in the

interest of the public, and applications for indemnity being solicited, the undue delay constitutes a tort.

We will for a moment analyze the application, wherein it is distinctly provided that, unless the full first premium is paid, the policy shall not take effect until issued by the company and received by the applicant; and further, that the first premium must be paid thereon, and also that his health, habits, and occupation shall at that time be as described in the application. It will be seen that no money was paid to the agent, but was to be paid when and if the policy was delivered.

In the case of *Duffie* v. *Bankers' Life Ass'n of Des Moines,* 160 Iowa, 19, 139 N. W. 1087, 46 L. R. A. (N. S.) 25, it was held that a tort arose from a failure to accept an offer to make a contract within a reasonable time. That case, however, is differentiated from the case at bar, in that the premium was paid coincident with making the application, and there was a delay of twenty days, the applicant became sick, the policy was issued as applied for, but never delivered. It was held there that it was a question for the jury as to whether or not the twenty days was a reasonable time, and that the company was chargeable with the negligence of its agent in failing to forward the application when the medical report was accepted.

This case has been followed by a number of courts, and we are of the opinion that the supreme court of Oklahoma, in *Security Insurance Co.* v. *Cameron,* 85 Okla. 171, 205 P. 151, 27 A. L. R. 444, reviewed the authorities, holding in line with the Duffie case that a tort arises from the failure of the insurance company to notify the applicant for insurance within a reasonable time of the acceptance or rejection of his application.

We are unable to perceive how an action may be maintained in tort which so clearly cannot be maintained on any theory on the contract. The Prudential Life Insurance Company was under no duty to write insurance on

the life of appellant's intestate, because there is no statute in this state fixing such duty upon insurance companies. We can find no such rule at the common law. It is quite elementary that there cannot be a tort without a breach of a legal duty. It is true that the business of insurance is affected with a public interest, and it may be that under the state and Federal Constitutions the legislature might impose upon insurance companies a duty in this behalf. But, unless and until the legislature shall declare a legal duty on the insurance companies to an applicant for insurance, despite the terms of the application, this court is without the power or the desire to trench upon legislative authority. The courts of the land shall retain the respect of good citizens so long as they function within the sphere assigned to them by the Constitution and laws of the land.

In the instant case the application was taken on the direct and positive offer of the applicant not to impose any liability upon the insurance company until the policy had been issued and delivered to him, and the premium had been paid therefor, he being in good health, etc. To hold that there is no contract, nor breach of a contract, in failing to insure this applicant, or to notify him that he was not insured, and then to hold that a tort arises, is to hold that there was created a legal duty, and to this we cannot subscribe.

In the case of *Jacobs* v. *N. Y. Life Ins. Co.*, 71 Miss. 658, 15 So. 639, Chief Justice CAMPBELL states the position of this court as follows:

"There is no escape from the plain stipulation of the contract 'that, if said application is not approved and accepted, said company shall incur no liability thereunder,' and the fact that said application was not approved and accepted, but the applicant died while the company was considering the application. It had incurred no liability, and cannot be held bound as if it had.

"We have examined the cases cited for the appellant, but they fall far short of maintaining the liability of the company. The denial of all liability by the company, on the facts of this case, does not need the support of adjudication, and we have not examined any, preferring to rest with perfect confidence on the unmistakable meaning of the written agreement, which no number of books or extent of ingenious argument could change so as to create liability, except on the terms it expresses."

See, also, the case of *N. Y. Life Ins. Co.* v. *McIntosh,* 86 Miss. 236, 38 So. 775, which is more nearly like this case; also *Scottish Union, etc.,* v. *Warren Gee Lumber Co.,* 118 Miss. 740, 80 So. 9, and *Newark Fire Ins. Co.* v. *Russell,* 142 Miss. 397, 107 So. 417, wherein the application was held to control, and that there was no contract of insurance.

The fact is that the applicant in this case agreed that there was no legal duty resting upon the insurance company, as we construe the application; and also this applicant was at liberty to reject any policy which the insurance company might tender him, whether tendered the next day, the next week, or the next year. And the defendant insurance company in this case breached no legal duty which it owed to the plaintiff's intestate, and for which an action in tort might be maintained; and, if the insurance policies were unduly delayed, as claimed by appellant's intestate, he was at perfect liberty to seek insurance elsewhere, and was under no obligation to the insurance company, nor was the insurance company under any obligation to him, in the state of facts presented here. Had intestate lived and brought suit for damages in his lifetime against this insurance company, for unreasonable delay in issuing and delivering these policies, we are curious to know by what rule he would measure his damages, and by what system of mental and legal gymnastics he could recover the face of the policy, or, as is sought to be done in this case, double this amount.

The fact that the insurance companies are granted a franchise to do business in this state does not and should not impose upon them the duty to consider promptly all who offer to them the risk of insuring their lives, no more than would be required of a bank to lend money promptly to all who should make application and suffer loss while the bank was negligent in determining whether or not it would accept the offer and enter into a contract.

There are other interesting questions in this case, but we shall content ourselves with this statement of our views.

*Affirmed.*