ANNA SWENTUSKY *vs.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued February 9th—decided April 18th, 1933.

*Josiah H. Peck* and *Leo V. Gaffney,* for the appellant (plaintiff).

*Lucius F. Robinson, Jr.,* for the appellee (defendant).

MALTBIE, C. J. On January 10th, 1932, at New Britain, George Swentusky, on the solicitation of an agent of the defendant, made application to it for a life insurance policy in the sum of $1000. The application stated that a semiannual premium of $10.35 was to be paid and that the policy was to be made payable at Swentusky's death to the plaintiff, his wife. It also contained these provisions: "I further agree that the policy herein applied for shall be accepted subject to the privileges and provisions therein contained and that unless the full first premium is paid by me at the time of making this application, the policy shall not take effect until issued by the company and received by me and the full first premium thereon is paid, while my health, habits and occupation are the same as described in this application. It is understood, however, that if at the time of signing this application the full first premium is paid, the insurance shall take effect from the date of this application, in accordance with the provisions of the policy hereby applied for, provided this application is approved and accepted at the home office of the company in Newark, N. J., under the plan, for the premium paid and amount of insurance applied for." No medical examination was required, but the policy was to be issued upon the basis of a declaration which was made by Swentusky at the time of the application, and in which he stated that he was in good health.

The plaintiff paid the agent $5 and the latter thereupon gave Swentusky and the plaintiff a receipt for that sum as paid by him. The receipt stated that the money was paid "on account of a policy applied for" in the defendant company and also contained these provisions: "It is understood that if this payment is

equal to the full first premium . . . on said policy (but not otherwise) the insurance shall take effect from the date of the application in accordance with the provisions of the policy applied for, provided said application is approved and accepted at the home office of the company at Newark, N. J., under the plan, for the premium paid and amount of insurance applied for. It is further agreed that said company will return the amount mentioned hereon if it declines to grant a policy on the life of said applicant or if it issues a policy other than as applied for which is not accepted by the applicant." Under this a note was added as follows: "Unless you receive your policy or your money is returned within six weeks from the date of this receipt please notify the company, giving the name of the person to whom paid, the amount paid and the date of payment."

As January 10th was a Sunday, the agent dated the papers January 9th. He took the application and declaration into his possession on the day they were signed, but he mislaid them until on or about January 21st, 1932, when he found them in his desk. He then changed the date upon them to January 21st and forwarded the papers with the $5 paid on account of the premium to the defendant's home office at Newark. On January 26th the agent notified Swentusky or his family of the change made in the date. The application was received and accepted by the defendant and a policy was written as requested in the application, naming the plaintiff as beneficiary, on or before January 26th. The policy was prepared and forwarded by the defendant to its agent in New Britain within a reasonable time from the making of the application, despite the delay of the agent in forwarding it. He received the policy on January 27th. For at least four or five days before that date Swentusky

had been sick with pneumonia and on that day he died. The policy was never delivered because of his illness and death.

The complaint states as the only basis of recovery by the plaintiff, the negligence and carelessness of the defendant's agent in failing to forward the application to it for a period of about two weeks. The trial court gave judgment for the defendant and the plaintiff has appealed.

The question whether there might be a recovery against an insurer where there has been a delay in issuing a policy of insurance after the making of an application, has been before the courts in a considerable number of cases. Carl W. Funk, in an article written in 1927, ably examines and analyzes the principal cases decided before that year, and in that article and in a comment written in 1930 in the Yale Law Journal all the later decisions of consequence are referred to. 75 University of Pennsylvania Law Review, p. 207; 40 Yale Law Journal, p. 121. Most of the more recent decisions have dealt with situations where liability was claimed to exist, as in the case before us, upon the ground of the negligence of the agent, and in all but two of these cases the insurer has been held liable. The exceptions are the cases of *Savage* v. *Prudential Life Ins. Co.*, 154 Miss. 89, 121 So. 487, and *Metropolitan Life Ins. Co.* v. *Brady* (Ind. App.) 174 N. E. 99.

It is not our purpose to discuss the reasoning of the the decisions in other jurisdictions in detail. We agree with the commentators upon them that there is much in them which runs counter to accepted legal principles. But that so many courts have found liability to exist evidences a general feeling that to hold otherwise would be to deny a claim intrinsically just, and emphasizes the need to test that claim by a sedu-

lous consideration of the legal principles which might be involved. In doing this, however, we cannot be unmindful of the limitations upon our proper function in declaring the unwritten law of this State. That law can never be static, but it must be everlastingly developing to meet the changing needs of a changing civilization. But if our system of law is to have stability and a measurable degree of certainty, its development must be an orderly process, an accretion to the body of principles which are the outgrowth of past precedents, reasoned out in pursuance of that method of thinking which is the essence of the common law. Merely because it seems to us unjust that a plaintiff, situated as is the one before us, should not recover, or that "social desirability" dictates that she should, affords no sufficient basis upon which we may find liability. Unless the application and reasonable development of accepted principles of law justify that recovery, the remedy, if any, rests with the legislature and not with the courts.

This action is not brought in contract, and that makes it unnecessary to discuss the question whether any liability based upon contract might arise in such situation as the one before us, except as it may be incidentally involved in a consideration of a possible liability in tort. Moreover, Swentusky did not pay the "full first premium" which is made a condition precedent to the promises of the defendant in the application and receipt. We must dismiss as lacking legal foundation the contention that insurance companies are so charged with a public interest as to impose upon them a peculiar duty to protect the interests of those who apply to them for insurance. An insurance company does indeed, as does every corporation, enjoy a franchise from the State, and it is subject to unusual oversight by the State in the conduct of its business. But to hold that,

because of these facts alone, there are imposed upon it duties or liabilities having no sanction in the established principles of law or in the statutes governing the insurance business, would be to open a field of legal liability the limits of which we cannot encompass, and which would go far to introduce chaos in the entire business of insurance, indeed, would almost necessarily reach out into the field of other specially chartered corporations occupying not dissimilar relations to the public, as banks, utility companies, and the like. Public interest more requires that stability of the insurance business which is necessary to guard the great body of persons who enter into relations with it for their own protection and that of those dependent upon them, than it does that certain individuals should be saved the loss which may result by adherence to established legal principles. We can see no legal justification in the nature of the business of insurance or in the relationship of insurance companies to the State or the public, upon which alone to rest liability in such a case as this.

We cannot so readily dismiss the claim that, out of the mere fact of the submission of an offer to an agent of the insurer, arises a duty on its part to exercise reasonable care in dealing with that offer, with a consequent liability upon the insurer for its failure to do so. The statement occurring in some of the opinions, that negligence cannot be predicated upon a state of facts which do not impose a legal duty, is true, if properly considered, but it does not mean that negligence can only arise where there is a precedent legal relationship between the parties. Negligence may be the outgrowth of such a relationship, as that of master and servant, landlord and tenant, physician and patient, and the like; but it also may arise out of the mere hope of the future establishment of such a rela-

tionship, as where a storekeeper throws open his place of business for all who may come to see his goods in the hope that they will purchase; and the duty to exercise reasonable care may arise where there is no thought of any such underlying relationship, as in the ordinary case where two automobiles meet upon a highway. Broadly considered, it might be said that the duty to exercise a reasonable care arises whenever the activities of two persons come so in conjunction that the failure to exercise that care by one is liable to cause injury to the other. Within this broad principle might conceivably be brought the situation created between the applicant for insurance and the insurer acting through its agent. But that principle is not universal in its application, and there are certain limitations fixed upon its operation. Thus, legislation has largely eliminated it from the relationship of master and servant by the workmen's compensation acts; so, before their passage, while the master was liable for injury to persons outside his employment resulting from the negligence of a servant in the course of his employment, he was not liable for injury resulting from the negligence of one of his servants toward his fellow; and as we recently pointed out, liability for negligence will not extend to include assumed risk. *Freedman* v. *Hurwitz*, 116 Conn. 283, 164 Atl. 647. It is a thoroughly established principle of the law of contracts, within the field of which insurance largely lies, that ordinarily a bare offer imposes no liability upon the person to whom it is made until it is accepted; he need make no reply to it at all, and if he fails to do so for any reason, because he does not propose to accept it, or because he has forgotten it, or under other circumstances, the only result the law recognizes is that no contract comes into existence. 1 Williston, Contracts, § 91; 1 Page, Contracts, § 150.

To impose upon one to whom an offer is made a duty to exercise reasonable care in dealing with it, both as to manner and time, would run counter to this established principle and, unless the principle is to be greatly modified, it furnishes a limitation upon the operation of the broad doctrine of negligence which might possibly otherwise apply. The bare making of an offer cannot afford a basis for any liability by reason of delay in accepting it or the want of care in dealing with it.

An application for insurance is, after all, but an offer, which may ripen into a contract by acceptance, as is illustrated by the fact that until acceptance the applicant is at liberty to withdraw his offer at any time. 1 Cooley, Briefs on Insurance, p. 579. We cannot see that out of the making of the application can arise an implied contract on the part of the insurer to act upon it within a reasonable time, with a correlative duty to deal with it with reasonable care. It is of course true that failure to act upon it may, in such a case as this, cause loss to the applicant or to those to be named beneficiaries in the policy, against which he expected to secure protection. That situation is not, however, peculiar to the insurance law; for example, one may make an offer to buy goods which he needs at a certain price, having reason to believe the price will advance, and may incur loss through the failure of the one to whom it is made to act upon the offer within a reasonable time. An implied promise for future action on the part of the insurer must, of course, to create a liability, be supported by a consideration. We cannot find in the situation before us any consideration for such a promise on the part of the insurer. No legal benefit moved from the applicant to it by reason of the offer, and any detriment which the applicant suffers is not one which was con-

templated by the terms of the offer or its acceptance. 1 Page, Contracts, § 522. The situation is not lacking in analogy to that where one gives another a gratuitous option to purchase property and that other incurs expense in reliance upon it. *Axe* v. *Tolbert,* 179 Mich. 556, 562, 146 N. W. 418. Had the applicant agreed during the pendency of the application not to seek insurance in some other company, a different situation might be presented, but he made no such agreement. He was at liberty at any time to apply to any other insurer for a similar policy; and if it was issued to him, to withdraw his offer to the defendant. The ownership of the $5 paid to the agent, as we shall point out later, did not pass to the defendant, and the applicant could withdraw it at any time; on the other hand, the insurer was at liberty to refuse the application for any or no reason; and hence that payment could afford no consideration. *Friendly* v. *Elwert,* 57 Ore. 599, 609, 112 Pac. 1085. As there was no implied contract on the part of the insurer to act upon the application within a reasonable time, there could be no basis for a correlative duty to deal with it, either itself or through its agent, with reasonable care.

It is true that the receipt of the $5 by the agent to be applied upon account of the first premium on the policy, might impose certain obligations upon the insurer. This was a small sum, but in other like situations such a payment might be a large amount. The money was paid upon a definite understanding in which the parties joined; it was to be held by the insurer pending its decision whether to issue the policy or not; if it decided to issue the policy the money was to be applied toward the first premium; but if it declined the application the money was to be repaid to the applicant. The money so paid could not become the property of the insurer until the policy was

issued. The insurer held it in a fiduciary capacity, somewhat analogous to that in which a bank holds a special deposit. 1 Perry, Trusts (7th Ed.) § 122. Certainly the insurer cannot hold that money indefinitely; and as the assertion of ownership of the money by the insurer and the issuance of the policy on the one hand, or the return of the money and the rejection of the application on the other, are inextricably joined by the express intent of the parties, it might be that there would be an obligation upon the insurer in such a case to act upon the application within a reasonable time. As far, however, as this particular feature of the situation is concerned, the plaintiff could have no advantage of it, first, because her pleadings are not adapted for relief upon that basis and, secondly, because of the finding of the court that the defendant acted upon the application within a reasonable time. It may be, also, that there might be situations where negligence of the agent in dealing with the payment advanced might impose a liability upon the insurer, as, for example, where the receipt of the payment was made by the company a condition of considering the application; but no such situation appears in the case before us.

We are not able to find any legitimate basis in the facts before us upon which the trial court might have held the defendant liable in this action.

There is no error.

In this opinion the other judges concurred.