## HENRY A. SCHLIEP v. COMMERCIAL CASUALTY INSURANCE COMPANY.[1]

May 4, 1934.

No. 29,761.

[1]Reported in 254 N. W. 618.

480

*Robb, Rich & Reynolds,* for appellant.
*Lowell W. Benshoof* and *P. F. Schroeder,* for respondent.

*JULIUS J. OLSON, Justice.*

Appeal from an order denying defendant's blended motion for judgment notwithstanding or new trial after verdict for plaintiff.

The action is one *ex delicto,* plaintiff claiming that the defendant and its agent negligently failed to act upon an application on the part of plaintiff for a policy of accident and health insurance within a reasonable time.

The authority of the agent was limited to solicitation of applications and accepting initial premiums, but such were to be sent to the Minneapolis office for further action. The agent solicited and obtained from plaintiff an application for a policy of accident and health insurance. The first year's premium was thought to be $44.64, and in that sum plaintiff executed his promissory note payable to the agent as an individual, not in his representative capacity, 30 days from its date. The note was dated December 18, 1931, and was duly paid by plaintiff on January 14, 1932. On the date of the application the agent wrote defendant's Minneapolis office:

"I am inclosing an application for a New Ultimate Disability Policy of $20 per week. The applicant is a civil engineer working for the county. I rated him in Class B, but told him that I was

not sure as to his rating as he has both office and field duties. Please write this policy on the basis of proper classification and it will be accepted."

On January 7, 1932, the Minneapolis office acknowledged receipt of the application,

"but [we] are somewhat at a loss in our attempt to check the premium you show in the application, for you have not given us the nature of his duties or the kind of policy applied for. * * * it occurs to us that in view of the trouble we have had in collecting our balances, we would much prefer to have you send us the net of this premium, in view of the fact that you have collected the premium; and also the above information before issuing the policy.

"We are also inclosing a few of the new form application blanks which we will ask you to use instead of the form which you have used in this case, in future cases."

On January 9, 1932, the agent wrote:

"In reply to your letter of the 7th in regard to Henry A. Schliep application, will say that the application was for a New Ultimate Disability Policy $20 per week indemnity. The premium rate as I find it is $16.80 for accident beginning with the first day and $28.00 for sickness beginning with the 7th day making a total of $44.80. The applicant is a civil engineer working for the county of Becker, State of Minn. His exact duties are both office and field divided about 50-50. The duties in the field are laying out new roads and straightening out old and other duties common to any county engineer (civil).

"In regard to the premium, I will say that I filled out the receipt in an attempt to collect it in advance but could not and I assume that when the receipt was not given to the applicant it is considered void. If I am wrong please let me know. I use that method to try for an advance premium. But if by so doing I bind the company I will discontinue doing so."

On January 22, 1932, the Minneapolis office wrote:

"We are returning the above application and ask that this be

rewritten for this has been taken on an old form which does not fit into the picture so to speak any longer.

"We are inclosing a few of the new forms and we would also like to call your attention to the fact that you have used old rates as well. As you no doubt must have been advised, the rates have increased for some of our accident and health policies and in this particular case the premium should be $62.60 instead of $42.40.

"We also note under question No. 22 that this applicant suffered a strained ligament in the side in November, 1931, causing a disability of three days duration. In view of this, we will also have to have a statement from Dr. A. E. Ellingson as to the present condition."

This apparently ended the matter as far as further correspondence is concerned. The agent remitted nothing to the company, and no policy was ever written. No authorized officer of the defendant knew or heard of anything further until this action was commenced.

From here on there is some dispute in the testimony. Plaintiff claims that when he paid the note he was promised a policy within 30 days by the agent; that he called for the same later and was given to understand that the policy would be forthcoming. He admits, however, that he received from the agent three different partial payments of the premium money that he had theretofore paid, a total of $21. The payments were $5 at one time and two $8 payments at other times. He claims that he does not know why he got these payments from the agent but thought perhaps he had overpaid his premium.

The agent testified that when the letter of January 22, 1932, came he conferred with plaintiff and informed him that the rate they had been considering was inadequate and that plaintiff would be required to pay an additional sum, that is to say, the difference between $62.60 and $44.64; that plaintiff said he did not care for the insurance at such a high rate and asked for his money back; that the agent told him that this would be done but that he was short and would pay it back as soon as possible. It is also claimed by

the agent that he paid back to plaintiff $26, two payments of $8 each and two of $5 each, pursuant to this arrangement. The court submitted the question to the jury upon plaintiff's theory of the case, namely, that this was an action in tort and that liability of defendant depended upon proof that the defendant or its agent had negligently failed to act upon the policy application within a reasonable time. As already stated, the jury found for the plaintiff.

■ "It is a well-settled rule, established by the great weight of authority, that mere delay in passing upon an application for insurance cannot be construed as an acceptance thereof by the insurer which will support an action *ex contractu.*" Anno. 15 A. L. R. 1026.

"**Effect of delay.** Acceptance of the application in some form being essential to the validity of the contract, mere delay in acceptance of an application made, or failure to notify insured of the rejection of his application, will not as a general rule constitute a contract of insurance." 26 C. J. p. 54, § 46(2).

Swentusky v. Prudential Ins. Co. 116 Conn. 526, 165 A. 686; Heiman v. Phoenix Mut. L. Ins. Co. 17 Minn. 127 (153), 10 Am. R. 154; Giddings v. Insurance Co. 102 U. S. 108, 111, 26 L. ed. 92; Misselhorn v. Mutual Reserve Fund L. Assn. 30 F. 545, 546; Travis v. Nederland L. Ins. Co. (C. C. A.) 104 F. 486, 488.

In an interesting article in 17 Minn. L. Rev. p. 578, it is said:

"Since an offer creates no duty in the offeree to accept or to reject, a mere failure on the part of the insurance company to act on the application, no matter how long its silence and inaction may be continued, does not amount to an acceptance, and creates no contract liability." Numerous cases are cited in support of the text.

■ Plaintiff does not rely upon an insurance contract, nor does he seek to enforce his claim for damages upon any contractual basis. Recovery is placed squarely upon tort, i. e. negligence on the part of defendant and its agent in not acting upon the application. This then brings us to a consideration of the cases upon which plaintiff places reliance. The leading case on this subject and the one that

has been followed more than any other case in the decisions upholding plaintiff's theory is that of Duffie v. Bankers L. Assn. 160 Iowa, 19, 139 N. W. 1087, 46 L.R.A. (N.S.) 25. It is there held that there is a duty imposed upon the insurance company because of its public character and its franchise from the state which requires it to act promptly upon all applications. If it so fails to act an action in tort lies. Other decisions of similar import place decision for plaintiff under similar circumstances upon various grounds. It is sometimes said that the principle of estoppel is applicable. In the Wisconsin case of Kukuska v. Home Mut. H. T. Ins. Co. 204 Wis. 166, 173, 235 N. W. 403, 405, the court sustains a recovery for plaintiff upon the theory that "it seems to be more in accord with ordinary legal concepts to say that it is a quasi-contractual duty."

Vance in his excellent work on Insurance (2 ed.) p. 190, under the title "Insurer's Liability in Tort for Negligent Delay," comments upon this phase of insurance law as interpreted by those courts that hold to the theory advocated and advanced by plaintiff. He refers to the doctrine as "novel" and as an "interesting and rather surprising rule." The doctrine has never been accepted in this state, nor has it heretofore come before this court. Thus we are free to act, and it becomes our duty to determine whether this "novel, interesting and rather surprising" doctrine is to be imposed upon insurers by judicial legislation.

A brief *résumé* of the cases holding the opposite view to those upon which plaintiff relies is deemed appropriate. Thus the supreme court of Mississippi in Savage v. Prudential L. Ins. Co. 154 Miss. 89, 102, 121 So. 487, 488, has this to say:

"Appellant is careful to state that this is an action *ex delicto,* not an action *ex contractu.* He does not contend that the minds of the parties had met, or that a contract had been consummated.

"Counsel's argument for reversal of the decision of the lower court is based upon the theory that a tort arises from a failure to accept an offer to make a contract within a reasonable time, and that the amount of recovery and the amount of damages shall be measured by the face value of the policy, there being a double indemnity clause in this case;　*　*　*

"We are unable to perceive how an action may be maintained in tort which so clearly cannot be maintained on any theory on the contract. The Prudential Life Insurance Company was under no duty to write insurance on the life of appellant's intestate, because there is no statute in this state fixing such duty upon insurance companies. We can find no such rule at the common law. It is quite elementary that there cannot be a tort without a breach of a legal duty. It is true that the business of insurance is affected with a public interest, and it may be that under the state and federal constitutions the legislature might impose upon insurance companies a duty in this behalf. But, unless and until the legislature shall declare a legal duty on the insurance companies to an applicant for insurance, despite the terms of the application, this court is without the power or the desire to trench upon legislative authority."

In National Union F. Ins. Co. v. School Dist. No. 55, 122 Ark. 179, 183, 182 S. W. 547, 548, L. R. A. 1916D, 238, the court said: "Negligence and liability therefor cannot be predicated upon a state of facts that do not impose any legal duty." See also Interstate Business Mens Acc. Assn. v. Nichols, 143 Ark. 369, 220 S. W. 477; Metropolitan L. Ins. Co. v. Brady (Ind. App.) 174 N. E. 99.

The supreme court of Connecticut in Swentusky v. Prudential Ins. Co. 116 Conn. 526, 530, 165 A. 686, 687, discussed the question thoroughly. We quote therefrom the following:

"The complaint states as the only basis of recovery by the plaintiff, the negligence and carelessness of the defendant's agent in failing to forward the application to it for a period of about two weeks. The trial court gave judgment for the defendant and the plaintiff has appealed.

"The question whether there might be a recovery against an insurer where there has been a delay in issuing a policy of insurance after the making of an application, has been before the courts in a considerable number of cases. Carl W. Funk, in an article written in 1927, ably examines and analyzes the principal cases decided before that year, and in that article and in a comment written in

1930 in the Yale Law Journal all the later decisions of consequence are referred to. 75 University of Pennsylvania Law Review, p. 207; 40 Yale Law Journal, p. 121. Most of the more recent decisions have dealt with situations where liability was claimed to exist, as in the case before us, upon the ground of the negligence of the agent, and in all but two of these cases the insurer has been held liable. The exceptions are the cases of Savage v. Prudential Life Ins. Co. 154 Miss. 89, 121 So. 487, and Metropolitan Life Ins. Co. v. Brady (Ind. App.) 174 N. E. 99.

"It is not our purpose to discuss the reasoning of the decisions in other jurisdictions in detail. We agree with the commentators upon them that there is much in them which runs counter to accepted legal principles. But that so many courts have found liability to exist evidences a general feeling that to hold otherwise would be to deny a claim intrinsically just, and emphasizes the need to test that claim by a sedulous consideration of the legal principles which might be involved. In doing this, however, we cannot be unmindful of the limitations upon our proper function in declaring the unwritten law of this state. That law can never be static, but it must be everlastingly developing to meet the changing needs of a changing civilization. But if our system of law is to have stability and a measurable degree of certainty, its development must be an orderly process, an accretion to the body of principles which are the outgrowth of past precedents, reasoned out in pursuance of that method of thinking which is the essence of the common law. Merely because it seems to us unjust that a plaintiff, situated as is the one before us, should not recover, or that 'social desirability' dictates that she should, affords no sufficient basis upon which we may find liability. Unless the application and reasonable development of accepted principles of law justify that recovery, the remedy, if any, rests with the legislature and not with the courts. * * *

"We must dismiss as lacking legal foundation the contention that insurance companies are so charged with a public interest as to impose upon them a peculiar duty to protect the interests of those who apply to them for insurance. An insurance company does in-

deed, as does every corporation, enjoy a franchise from the state, and it is subject to unusual oversight by the state in the conduct of its business. But to hold that, because of these facts alone, there are imposed upon it duties or liabilities having no sanction in the established principles of law or in the statutes governing the insurance business, would be to open a field of legal liability the limits of which we cannot encompass, and which would go far to introduce chaos in the entire business of insurance, indeed, would almost necessarily reach out into the field of other specially chartered corporations occupying not dissimilar relations to the public, as banks, utility companies, and the like. Public interest more requires that stability of the insurance business which is necessary to guard the great body of persons who enter into relations with it for their own protection and that of those dependent upon them, than it does that certain individuals should be saved the loss which may result by adherence to established legal principles. We can see no legal justification in the nature of the business of insurance or in the relationship of insurance companies to the state or the public, upon which alone to rest liability in such a case as this."

The supreme court of West Virginia in Thornton v. National Council, 110 W. Va. 412, 414, 158 S. E. 507, 508, said:

"The long established conception of the legal relations between an applicant and an insurance company is that such relations are fundamentally the same as those between parties negotiating any other contract, and are 'purely contractual.' 'The contract of insurance is to be tested by the principles applicable to the making of contracts in general.' * * * It is settled almost beyond cavil that mere delay, mere inaction, by an insurance company in passing on .an application does not constitute an acceptance or establish the relationship of insurer and insured. * * * Yet the theory advanced by appellee, in making the insurer responsible in damages for the amount of the policy because of delay, would accomplish by indirection that which the law will not permit to be done directly.

"No reason is apparent why an insurance contract should be regarded as of any more interest to the public than a contract of employment. It is of as much importance to the public that a person and his dependents have support during his lifetime (by wages or salary) as that his beneficiaries have a competency (through insurance) after his death. Yet it has never been held that delay in passing upon an application for employment affected the public interest to the extent that it made the employer liable for all damages arising from such delay. The theory advocated by appellee is such an innovation on established insurance law that this court is not prepared now to accept it. We do not mean to imply, however, that action in such case might not lie on an implied contract."

See also Munger v. Equitable L. Assur. Society (D. C.) 2 F. Supp. 914.

The language used and the reasons employed in the cases here reviewed appeal to us as more consonant with reason and established legal principles than those advanced by the courts upholding plaintiff's theory. It is apparent that if liability is here to be imposed in an action *ex delicto* this court will be compelled to engage in judicial legislation. If and when it is desired to impose upon insurers additional burdens or requirements, the same should come through the legislative department of the government and not by virtue of judge-made law.

Many other assignments of error are found in the briefs, but in view of what has been stated no further discussion need be had as to the same except perhaps it may be appropriate to remark that in the facts heretofore referred to it will be observed that the plaintiff paid his premium note on January 14, 1932, and at that time, according to his own version, he was promised a policy within 30 days. He never got the policy, although he claims he went back to the local agent and asked for it. He also admits that he received from the agent $21 in three different payments, the last thereof being sometime during the summer of 1932. He claims that he does not know why this money was paid back to him but freely admits that he had no other business dealings with the agent

than this particular insurance application. If he did not know why this money was coming back to him in driblets, it would seem that he would at least make some effort to find out. It does not seem reasonable to believe that he acted without knowledge under the circumstances here appearing. Everything points to the fact that he realized and recognized the situation, namely, that no policy was to be issued and that he was to get back what money he had paid the agent when and as the latter was able to repay it.

His application was made December 18, 1931. The accident occurred October 7, 1932, something more than nine and one-half months after the accident policy had been applied for. He made no inquiry of the agent about his policy after the agent started to pay the money back to him.

The order appealed from is reversed with instructions to the trial court to grant defendant's motion for judgment in its behalf notwithstanding the verdict.

So ordered.

