THELMA RASMUSSEN, ADMINISTRATRIX OF ESTATE OF RAYMOND RASMUSSEN, v. THE PRUDENTIAL INSURANCE COMPANY.

152 N. W. (2d) 359.

July 21, 1967—No. 40,293.

Neville, Johnson & Thompson, for appellant.
Winzenburg & Halloran, for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court.

On November 17, 1964, Raymond Rasmussen applied for a contract of insurance with defendant, The Prudential Insurance Company of America, following a previous discussion in April of that year with Mr. David Anthony, the local Prudential agent in Fairmont. The particular policy

Rasmussen applied for consisted of $6,000 term insurance; $2,000 full life insurance; waiver of premium in event of disability; payment for loss of eyesight or limbs; and extended insurance to the extent of cash value. It required a premium of $16.46 per month, which amount was paid to the agent when the application was taken.

It was understood by Mr. and Mrs. Rasmussen that the policy of insurance would not become effective until Mr. Rasmussen had completed the required physical examination [1] and the policy was approved by the home office. They were also informed by defendant's agent that it would take approximately 30 days before the application could be approved and a policy actually issued.

The home office of defendant, after considering the information contained in the application, the physician's report, and an inspection report, rejected the application. However, defendant prepared a proposed policy of insurance, which differed from the policy applied for in that there was no waiver of premium in event of disability, no payment for loss of eyesight or limbs, no extended insurance to the extent of cash value. The monthly premium was to be $23.18 instead of $16.46.

The proposed policy and a form for amending the original application were mailed to defendant's agent in Fairmont. He testified that he received the proposed policy and form either Wednesday, December 16, or Thursday, December 17, 1964, but for other reasons made no attempt to contact either Mr. or Mrs. Rasmussen between those dates and December 28; that on Sunday, December 20, he went to Waseca, where his father died that day; that he returned to his home in Fairmont Thursday, December 24, on Christmas Eve. On Monday, December 28, he went to the Rasmussen home to present the proposed policy to the applicant. He then learned of Mr. Rasmussen's decease that same morning.

It was not contended at trial that either the policy applied for or the proposed policy was in effect at the time of Mr. Rasmussen's death. The case was submitted to the jury on the sole question of whether the defendant's agent was negligent in not delivering the proposed policy sooner. The judge instructed that he had "decided as a matter of law that if David Anthony, the agent of the defendant Prudential Company was negligent

---

[1] The physical examination was made December 4, 1964.

in not delivering the policy to Mr. Rasmussen, before December 28, that the plaintiff, Mrs. Rasmussen, as administrator to the estate of Raymond Rasmussen is entitled to recover $8,000.00. So this action is based upon the claim of negligence." The court explained that negligence is the want of due care, the failure to exercise such care as a person of ordinary prudence usually exercises under similar circumstances; that what constitutes want of care depends on the circumstances of each case and that care must be commensurate with the situation known to the defendant through its agent or what he could reasonably have been expected to know.

At the conclusion of plaintiff's case, defendant moved for a directed verdict, which motion was denied. Defendant renewed the motion upon the completion of all the testimony, and it was again denied. The jury returned a verdict in favor of plaintiff for $8,000. Defendant thereafter moved for judgment notwithstanding the verdict and that motion was also denied. Defendant claims error in the denial of all its motions. The legal issues it raises on appeal are (1) whether there is a cause of action ex delicto in favor of an insurance applicant against an insurer for failure to promptly present a counterproposal; and (2) whether the injury to plaintiff for failure to deliver a counterproposal can be measured by the amount of the rejected policy or of the proposed policy.

The parties agree that they did not enter into a contract for insurance; that Mr. Rasmussen's application was only an offer made to defendant which was rejected; and that the proposed policy, prepared by defendant and differing in four material respects from the one applied for, was a counteroffer which was not presented for the applicant's acceptance or rejection. Defendant contends that, having the right to refuse the initial offer, it also had the right to refuse to make a counteroffer, and had no legal duty to make it upon rejection of the initial offer. It further contends that there was no legal duty on its part to conform to a certain standard of conduct in submitting a counterproposal.

Prosser, Torts (3 ed.) § 53, states that a duty in negligence cases may be defined as an "obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Actionable negligence is a failure to discharge a legal duty to the one in-

jured. Lacking duty, there can be no negligence. Woodring v. Pastoret, 221 Minn. 50, 21 N. W. (2d) 97. In an earlier Minnesota case defining actionable negligence in the same manner as it was defined in Woodring, Mr. Justice Mitchell said:

"* * * Even if a defendant owes a duty to some one else, but does not owe it to the person injured, no action will lie." Akers v. Chicago, St. P. M. & O. Ry. Co. 58 Minn. 540, 544, 60 N. W. 669, 670.

It is elementary that one has a right to enter into contractual relations with another or to refuse to do so. Harding v. Ohio Cas. Ins. Co. 230 Minn. 327, 41 N. W. (2d) 818. We have held that the conception of legal relations between an applicant for insurance and an insurance company is essentially and fundamentally the same as between parties negotiating other contracts, and, as such, is purely contractual, Hockemeyer v. Pooler, 268 Minn. 551, 130 N. W. (2d) 367;[2] that, subject to the statutory law of the state, a policy of insurance is within the application of general principles of the law of contracts, Bobich v. Oja, 258 Minn. 287, 104 N. W. (2d) 19; and that an application for life insurance is only a proposal and like any other offer does not become a contract until accepted, Olson v. American Central Life Ins. Co. 172 Minn. 511, 216 N. W. 225.

Defendant cites as controlling Schliep v. Commercial Cas. Ins. Co. 191 Minn. 479, 254 N. W. 618, and Tjepkes v. State Farmers Mutual Ins. Co. 193 Minn. 505, 259 N. W. 2, in which we held that an insurer does not have a duty to give prompt notice of its rejection of an application for insurance. We agree that these cases are determinative of this case.

In Schliep the action was one ex delicto in which plaintiff claimed that defendant insurance company and its agent negligently failed to act within a reasonable time on his application for an accident and health policy. The application was made December 18, 1931, and on that day the agent sent the application to the defendant company. After some correspondence between the agent and the company with respect to the nature of the applicant's duties and other information, the company wrote its agent

---

[2] See, also, Schliep v. Commercial Cas. Ins. Co. 191 Minn. 479, 254 N. W. 618; Tjepkes v. State Farmers Mutual Ins. Co. 193 Minn. 505, 259 N. W. 2.

on January 22, 1932, and returned the application, explaining that it was written on an old form. It enclosed new forms and requested a statement from a doctor concerning a brief disability of the applicant. This apparently ended the correspondence. Nothing was remitted to the company although it appears that on the date of the application plaintiff executed his promissory note payable to the agent as an individual for what was thought to be the first year's premium, which note was paid by plaintiff on January 14, 1932. No policy was ever written and no authorized officer of the company knew or heard anything about the matter until plaintiff sued the company after he was injured on October 7, 1932. In the meantime the company's agent failed to notify the plaintiff that his application had not been accepted. We held that there was no legal duty on the part of the insurance company to accept or reject an application for insurance and that mere delay on the part of the soliciting agent in forwarding the application to the office of the company where it was to be acted upon did not give rise to an action ex delicto, saying also (191 Minn. 488, 254 N. W. 622):

"* * * It is apparent that if liability is here to be imposed in an action *ex delicto* this court will be compelled to engage in judicial legislation. If and when it is desired to impose upon insurers additional burdens or requirements, the same should come through the legislative department of the government and not by virtue of judge-made law."

Tjepkes v. State Farmers Mutual Ins. Co. 193 Minn. 505, 259 N. W. 2, was to the same effect, i. e., that there was no legal duty on the part of an insurance company to accept or reject an application for insurance and that mere delay on its part in acting upon an application did not give rise to an action ex delicto.

Notwithstanding these cases, plaintiff, while agreeing that as a matter of law an insurance company is under no legal duty to enter into a contract of insurance in response to an application or to make a counter-offer, contends that the insurer is under a duty to either accept or reject an application for insurance within a reasonable time and to inform the applicant of its actions. Plaintiff concedes there are authorities, cited in defendant's brief, holding that an insurance company is not answerable

for its negligence in a case like the instant one, but argues that the more reasonable and widely held view is that set forth in 12 Appleman, Insurance Law and Practice, § 7226.

That view is that the nature and purpose of life insurance contracts, the duties an insurer assumes under such contracts, and the manner in which they are negotiated, impress them and the relationship of the parties with characteristics unlike those incident to negotiations for contracts in ordinary commercial transactions as respects liability of the insurer for failing to act promptly upon an application; that the business of insurance is affected by public interest, the insurer being bound to furnish indemnity which the state has authorized it to issue, or to decline to do so within such a reasonable time as to enable the applicant to act intelligently upon rejection; and that a claim based upon a promise to insure and failure to issue a policy is not based upon a contract of insurance but rather upon the damages produced by the failure of the insurer to promptly perform the duty which the facts impose upon it.

Plaintiff argues that the reasoning of authorities, cited by defendant, to the effect that the legal relationship between an applicant for insurance and the insurance company is the same as between any other parties negotiating a contract is logical but is not realistic because it completely ignores the factual relationship between the parties. She cites Bekken v. Equitable Life Assur. Society, 70 N. D. 122, 293 N. W. 200, which quotes Pfiester v. Missouri State Life Ins. Co. 85 Kan. 97, 116 P. 245, in which the Kansas court criticized as unrealistic the theory of the cases supporting defendant's position. The North Dakota court reasoned that the correct principle is announced in the line of decisions holding that an insurance company that has solicited and received a completed application for insurance is under a legal duty to take prompt action on the application and to give prompt notice to the applicant of its action, and is liable in tort for negligent delay in acting upon the application and in notifying the applicant in case the application is rejected.

Plaintiff also cites German Alliance Ins. Co. v. Lewis, 233 U. S. 389, 34 S. Ct. 612, 58 L. ed. 1011, which distinguishes the business of insurance from the ordinary business or commercial world and holds that it is essentially different from ordinary commercial transactions.

In Schliep, this court considered cases representing both theories on the subject of whether an insurer should be found liable to an applicant for failure to act promptly on an application for insurance and to notify the applicant of its action. Duffie v. Bankers' Life Assn. 160 Iowa 19, 139 N. W. 1087, 46 L. R. A. (N. S.) 25, discussed in Schliep, held that an insurance company, because of its public character and its franchise from the state, has a duty to act promptly on all applications and that an action in tort lies for its failure to do so. Savage v. Prudential Life Ins. Co. 154 Miss. 89, 121 So. 487, also considered in Schliep, was an action ex delicto in which the Mississippi court held that there could not be a tort without a breach of a legal duty. Saying that it could not see how an action could be maintained in tort which could not be maintained on any theory on the contract, the court also held that the defendant insurance company was under no duty to write insurance on the life of plaintiff's intestate; that there was no state statute fixing such a duty upon insurance companies; and that the court was without the power or desire to trench upon legislative authority. Obviously, in the Schliep case we followed the reasoning and principles of Savage and other cases disallowing recovery.

The only allegation of negligence in plaintiff's complaint here was that defendant's agent negligently failed to deliver the policy to the applicant until after his death. In resisting defendant's motion for a directed verdict at the close of plaintiff's case and again at the conclusion of the testimony, plaintiff took the position that the evidence produced at the trial was sufficient to support plaintiff's allegation that there was negligence on the part of the agent in failing to deliver the policy to the deceased applicant for his acceptance and that such negligence was the specific issue plaintiff was relying on. The trial court ruled as a matter of law that if the agent was negligent in not delivering the policy to the applicant before December 28 the administratrix was entitled to recover $8,000.

It is evident here that the trial proceeded upon, and the court recognized, a cause of action for negligence in failing to promptly submit a counterproposal rather than in failing to promptly notify the applicant of the acceptance or rejection of his original application. It is therefore our opinion that the cause of action was based on the agent's negligence in

not promptly delivering the counteroffer of a different policy. Under the facts and circumstances here there was no cause of action against defendant for failing to notify the applicant earlier than December 28 of the rejection of his application. Schliep v. Commercial Cas. Ins. Co. *supra;* Tjepkes v. State Farmers Mutual Ins. Co. *supra.*

Clearly, if an insurance company is under no legal duty to accept or reject an application for insurance, it is under no legal duty to submit a counterproposal. Hence, mere delay on the part of its soliciting agent in forwarding a counterproposal to the applicant does not give rise to an action ex delicto. Defendant's motions for a directed verdict and for judgment notwithstanding the verdict should have been granted.

In view of our decision we need not consider defendant's issue relating to the measure of damages.

Reversed.