ADOLPH H. SCHLITZ *vs.* PABST BREWING CO. *et al.*

Submitted on briefs May 10, 1894.    Affirmed May 24, 1894.

No. 8890.

**Servant injured while driving master's defective wagon.**

Where the dangerous condition of an instrumentality furnished a servant to do his work is known to both the master and servant, and the latter, upon his objecting to continue its use, is induced to do so for a short time by the request of the master, for his own convenience and purposes, and his promise that at the end of such time the use shall be discontinued, the servant does not during such time assume the risk

incident to such dangerous condition, unless it be so imminently and immediately dangerous that a man of ordinary prudence would have refused longer to use it.

Appeal by defendants, Pabst Brewing Co. and Jos. Schlitz Brewing Co., two corporations, from a judgment of the District Court of St. Louis County, *J. D. Ensign,* J., entered against them March 23, 1894, for $2,081.26.

The defendants manufacture malt liquors at Milwaukee, Wis. and have a joint agency for its sale at Duluth. They employed the plaintiff, Adolph H. Schlitz to drive a delivery wagon there and deliver beer at saloons. On July 4, 1891, he was told by Pierce the general agent in charge at the Duluth agency to use a certain wagon. He objected to using it saying, that the body of the wagon was so low that in turning the front wheels could not go under it and that in attempting to turn a short corner it was liable to upset. Pierce said to him in reply that they were short of wagons for that day and that he must use it for the rush of July 4th and that on the following day plaintiff should have another and safe wagon. Schlitz consented to and did use it until six o'clock in the afternoon, when in climbing up onto it the team made a short turn and upset the wagon and seriously injured him. He brought this action against the two corporations to recover damages for his injuries. He proved that the wagon when new allowed the front wheels to go under the body in turning, but that by long use and overloading the springs had flattened down and allowed the body of the wagon to settle, so that the wheels would no longer go under it. He had a verdict for $1,850. Judgment was entered thereon and defendants appeal.

*Cash Williams & Chester,* for appellants.

We are referred to no adjudicated case which upholds the liability of a party under circumstances like those presented by the evidence here. A rule imposing liability in this case would be far reaching and would extend it to many of the vocations of life for which it was never intended. The rule of the master's liability was designed for the benefit of employés engaged in work where machinery and materials are used, of which they can have but little knowledge, and not for those engaged in ordinary labor, which only requires the use of implements with which they are entirely familiar. *Corcoran* v. *Mil-*

*waukee G. L. Co.,* 81 Wis. 191; *Marsh* v. *Chickering,* 101 N.Y. 396; *Priestley* v.·*Fowler,* 3 M. & W. 1; *Fort Wayne J. & S. R. Co.* v. *Gildersleeve,* 33 Mich. 133; *Williams* v. *Clough,* 3 H. & N. 258.

*John Jenswold, Jr.,* for respondent.

Plaintiff was peremptorily ordered to use this wagon and he had no choice in the matter, but had to use it because of the emergency of the defendants' business on that day. Under the circumstances plain-·tiff did not assume the risk. *Greene* v. *Minneapolis & St. L. Ry. Co.,* 31 Minn. 248; *Lyberg* v. *Northern Pac. R. Co.,* 39 Minn. 15; *Gibson* v. *Minneapolis, St. P. & S. Ste. M. Ry. Co.,* 55 Minn. 177; *Parody* v. *Chicago, M. & St. P. R. Co.,* 15 Fed. Rep. 205; *Central Trust Co.* v. *Wabash, St. L. & P. Ry. Co.,* 26 Fed. Rep. 897; *Pieart* v. *Chicago, R. I. & P. Ry. Co.,* 82 Ia. 148; *Roux* v. *Blodgett & D. L. Co.,* 85 Mich. 519.

If it is the law as claimed by defendants, that as wagons are instrumentalities commonly made use of no negligence can be charged in furnishing one that is not reasonably safe, this court would never have decided *Hefferan* v. *Northern Pac. R. Co.,* 45 Minn. 471, as it did. *Rawley* v. *Colliau,* 90 Mich. 31; *Steen* v. *St. Paul & D. R. Co.,* 37 Minn. 310; *Brown* v. *Gilchrist,* 80 Mich. 56; *Schubert* v. *J. R. Clark Co.,* 49 Minn. 331.

GILFILLAN, C. J.   Plaintiff, a driver of defendants employed to drive a delivery wagon, was, while so employed, injured, as he claims, through a dangerous defect in the wagon he was using.   The evidence was such as to justify a finding that the wagon was defective to such a degree as to be dangerous to the driver, and that the injury to plaintiff was in consequence of its dangerous condition.

Both parties, employer and employé, knew equally well the dangerous condition of the wagon, so that, under ordinary circumstances, it would be a case of the assumption of risk by the employé continuing to use it.

But it is a well-settled rule that where the servant, though he knows the dangerous condition of the instrumentality furnished him, is induced to continue its use by the request of the master, and his promise to remedy the defect after complaint made to him by the

servant, he may continue such use for a reasonable time for the defect to be remedied without assuming the risk incident to its dangerous condition, unless it be so imminently and immediately dangerous that a man of ordinary prudence would have refused longer to use it. *Greene* v. *Minneapolis & St. L. Ry. Co.,* 31 Minn. 248, (17 N. W. 378.)

The most logical reason for the rule is that, under such circumstances, it must be taken as understood between them that the continued use in the then condition of the instrumentality, being for the convenience and purposes of the master, is to be at his risk, and not at the risk of the servant.

The cases in which the rule has been applied have been cases where there was a promise on the part of the master to remedy the defect. But we can see no difference in principle between such cases and those where, upon the servant's objecting to continue the use, the master, for his own convenience and purposes, induces the servant to continue it for a short time, upon the promise that the use shall be discontinued at the end of such time. What, for instance, could be the difference on the matter of assuming the risk between a promise to remedy the defects of this particular wagon and a promise to furnish another without such defects? We can see none.

Of course, though in such a case the risk incident to the dangerous condition of the instrumentality is on the master, if the servant, by his own negligence in the manner of using it, bring injury on himself the master will not be liable.

Whether that was this case, and whether the wagon was so imminently and immediately dangerous that an ordinarily prudent man would refuse to use it longer, was for the jury.

Judgment affirmed.

Buck, J., absent, sick, took no part.

(Opinion published 59 N. W. 188.)