ADDIE WOODRING v. CLARA E. PASTORET.[1]

December 7, 1945.

No. 34,082.

[1]Reported in 21 N. W. (2d) 97.

*Thorwald Hansen,* for appellant.
*Abbott, MacPherran, Dancer & Montague,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from an order sustaining her adversary's general demurrer to her complaint.

The complaint alleges these facts: Plaintiff is an elderly person "with defective vision." On December 15, 1943, as was her daily chore, she took defendant's "prized and loved" dog out for its daily airing and exercise. In the performance of her job, she "was charged with the duty of preventing said dog from becoming lost or injured." The dog "was active and with a known tendency to run away and become lost." "On a number of previous occasions" when it "had been permitted to leave the house unattended," it "had become lost," to defendant's "great distress and concern." During that month, Duluth's streets and sidewalks had become "icy, snow-covered, slippery, uneven and dangerous." On the mentioned day, plaintiff and defendant's pet dog went forth on the dog's usual errands. They had gone only about a block from their home when the dog—

"ran across the street and away from plaintiff," who thereby "became greatly concerned and worried lest said dog run away and become lost"; that, as a consequence, so plaintiff thought, "an emergency arose and existed and that there was immediate need of haste by plaintiff to recover control of said dog before he could run away. That the attention of plaintiff was necessarily directed to said dog. That while so engrossed and while following and pursuing said dog, plaintiff stepped on a spot on the sidewalk which was covered with slippery, rough ice and snow and was hazardous and dangerous, of which plaintiff had no notice, whereby she was caused to fall and thereby received * * * injuries," for which she now asks $15,000.

The basis upon which plaintiff seeks to fasten liability upon defendant seems to be that defendant, who as her employer had directed plaintiff to take the dog out for its daily and accustomed

airing, failed in her duty to provide a safe place for plaintiff to work; that defendant neglected "to make, adopt and enforce rules for the safety and guidance of plaintiff in said work," and failed "to warn and instruct plaintiff in connection therewith so as to insure plaintiff's safety," and that for these reasons defendant was guilty of breach of duty and should respond in damages for plaintiff's injuries.

■ "Actionable negligence," said Mr. Justice Mitchell in Akers v. C. St. P. M. & O. Ry. Co. 58 Minn. 540, 544, 60 N. W. 669, 670, "is the failure to discharge a legal duty to the person injured. If there is no duty, there is no negligence. Even if a defendant owes a duty to some one else, but does not owe it to the person injured, no action will lie. The duty must be due to the person injured." Our cases are cited in 4 Dunnell, Dig. & Supp. § 6973, note 1.

■ We find no allegation in the complaint that there were any dangerous spots or places in or upon the streets and sidewalks known to defendant and not known to plaintiff. On the contrary, as a matter of fact and as alleged by plaintiff, for a period of at least two weeks prior to the accident, plaintiff had taken the dog out on these daily trips. During all that time "the public streets and sidewalks * * * were extremely hazardous and dangerous." Plaintiff made her own selection of the route to be taken. Obviously, defendant had nothing to do with the city's thoroughfares.

Plaintiff thinks Schumaker v. St. P. & D. R. Co. 46 Minn. 39, 48 N. W. 559, 12 L. R. A. 257, is especially helpful to her theory. There, plaintiff, defendant's employe, was sent to a point some nine miles from shelter in extremely cold weather and was abandoned there and left to his own resources. In overruling defendant's demurrer, we held that a jury question was presented as to whether abandonment of the workman under such conditions was an actionable breach of duty. The basis for liability, we thought, was defendant's failure to furnish plaintiff with means of returning to the place from which he had been sent, there being no other or available place or means for him to find shelter. We can find

nothing in that case even remotely applicable to plaintiff's situation here.

Nor do we find Slindee v. City of St. Paul, 219 Minn. 428, 18 N. W. (2d) 128, of any aid to her. That was an action against the city for negligence in failing to keep its sidewalks in reasonably safe condition for travel. The only similarity between the two cases is that there, as here, plaintiff was hurt while taking a dog out for an airing. But that case did not involve a master-servant relationship, upon which the present case hinges. If plaintiff here had sued the city, another and wholly different problem would have been presented. Obviously, defendant in this case had no control of the thoroughfares of Duluth.

More applicable to the situation here is Wiseman v. N. P. Ry. Co. 214 Minn. 101, 7 N. W. (2d) 672. There, plaintiff was injured by a stampede of spectators out to view a great fire involving defendant's derailed and burning cars. A tank car loaded with gasoline exploded, frightening the spectators, who en masse surged and scurried away from the scene, and plaintiff was knocked down and injured in the melee. Liability was there predicated upon defendants' alleged failure to warn that an explosion might occur, since a gasoline tank car was involved in the wreck; that because thereof gathering crowds might well be frightened thereby; and that a stampede was likely to occur and cause harm to someone. But we held (214 Minn. 107, 7 N. W. [2d] 675):

"The purpose of a warning is to apprise a party of the existence of danger of which he is not aware to enable him to protect himself against it. Where, as here, the party knows and is aware of the danger, a warning would serve no useful purpose and is unnecessary."

And so here, where plaintiff knew from actual experience, and so alleges in her complaint, that "during the month of December, 1943, the public streets and sidewalks of the city of Duluth * * * were extremely hazardous and dangerous, in that they were covered with snow and ice."

Directly in point to sustain the trial court's conclusion is our holding in Jurovich v. Interstate Iron Co. 181 Minn. 588, 233 N. W. 465. There, plaintiff, an ignorant, illiterate miner, unable to appreciate the dangers incident to continued exposure to cold water, was put to work in a wet place in defendant's mine. In sustaining the trial court, which had sustained defendant's demurrer, we held (181 Minn. 589, 233 N. W. 465):

"* * * that the complaint shows upon its face that the plaintiff voluntarily assumed the risks and hazards to which he was exposed by working in this cold water. The effect of continuous saturation with ice-cold water must be apparent to even an ignorant and illiterate person. Ignorance and inexperience cannot be so great as not to appreciate the physical hazards of working in ice-cold water. Reasonable minds could reach only one conclusion as to that. Such hazards were certainly just as apparent to the plaintiff as they were to the defendant, and no verdict could be rendered in favor of the plaintiff upon his complaint in this action which would not be set aside on the ground that he had assumed the risk incident to his working in this cold water."

In this case the facts are much more favorable to this defendant than they were to defendant in the cited case. There, the premises were in defendant's complete ownership and control. Here, Duluth's streets and sidewalks were wholly under the control of the city. Defendant had nothing to do with them. We can find no peg upon which to hang liability.

Order affirmed.