## LOUISE GEIS v. C. L. HODGMAN.

95 N. W. (2d) 311.

February 27, 1959—No. 37,573.

2

*Mahoney & Mahoney* and *Geoffrey J. Mahoney,* for appellant.
*Vennum, Newhall, Ackman & Goetz,* for respondent.

KNUTSON, JUSTICE.

This is an appeal from a judgment entered in favor of plaintiff pursuant to a verdict rendered by a jury.

Plaintiff, who was 56 years of age at the time of trial, had been employed as a housekeeper in the home of defendant for a number of years prior to the occurrence of the accident for which she here seeks to recover damages for personal injuries. Her duties were that of a housekeeper, and, among other things, she was required to go down to a mailbox to pick up the mail. Defendant's home is located on a hill overlooking Lake Minnetonka. The only access to the home is over a private driveway which runs from a public highway some 200 feet from the home. The driveway is constructed with a blacktop surface and is about 12 or 15 feet wide. There are trees on the side of the driveway. During the wintertime defendant had made an arrangement with a person engaged in snow removal for clearing and plowing the driveway after heavy snows with a jeep equipped with a plow. About a week before the accident, the driveway had been so plowed. There had been two slight snows in the interval between the last plowing and the occurrence of the accident hereinafter described.

On February 6, 1956, at about 2 o'clock in the afternoon, plaintiff left defendant's home to go down to the mailbox to pick up the mail. It was a nice clear day. The temperature at that time was 34 degrees above zero. Her eyesight was good. She had no difficulty in going to the mailbox. In returning, she walked more to the right of the center of the driveway and, when she had gone a short distance, she stepped on a patch of ice, fell, and injured herself. She admits that she knew the patch of ice was there. She now seeks to collect damages for the injuries which she sustained.

At the close of plaintiff's evidence, defendant moved for a dismissal and, at the close of the case, for a directed verdict on the ground that no actionable negligence had been proved; that plaintiff was guilty of contributory negligence as a matter of law or had assumed the risks involved as a matter of law. The motions were denied; a verdict was returned in favor of plaintiff; a motion for judgment notwithstanding the verdict was denied; and, after the entry of judgment, this appeal was taken from the judgment.

Defendant claims that he was entitled to a directed verdict and is now entitled to judgment notwithstanding the verdict for the reason (1) that no actionable negligence of defendant has been established; (2) that plaintiff was guilty of contributory negligence as a matter of law; and (3) that plaintiff assumed the risks of falling when she voluntarily stepped on slippery ice.

For the purpose of this decision we may concede that the evidence presented fact questions for the jury's determination as to defendant's negligence and plaintiff's contributory negligence. That leaves for determination the question of whether, as a matter of law, plaintiff had assumed the risks of falling when she voluntarily walked onto the patch of ice which she admits she saw before she stepped on it.

In dealing with the defense of assumption of risk it is apparent at the outset that a great deal of confusion exists in the law as to the proper application of this doctrine. One of the leading authors on the subject has been led to say:

"* * * The net result of the portentous mass of decisions dealing with the effect of the servant's knowledge of the increased danger caused by the master's breach of duty, the point in which the whole controversy centers, is a veritable chaos of conflicting precedents."[1]

A great deal has been written on the subject. The history and origin of the rule and the theory upon which it rests, as well as the inconsistency

---

[1]See, Labatt, *The Relation Between Assumption of Risks and Contributory Negligence,* 31 Amer. L. Rev. 667; see, also, Rice, *The Automobile Guest and the Rationale of Assumption of Risk,* 27 Minn. L. Rev. 323, 347; Prosser, Torts (2 ed.) § 55.

of the courts in applying it, have been discussed in numerous cases,[2] articles, and texts, an examination of which only demonstrates the futility of attempting any rational reconciliation of the authorities. It is apparent that respectable authority can be found to support almost any view. However, some observations regarding the rule and its use in this state in master and servant cases may be of help.

Originally at least, the rule as applied in master and servant relationships rested on contract. It was held generally that a master was under no obligation to indemnify the servant for injuries arising out of a peril that was an ordinary incident of the employment.[3] Up to that point there has not been too much difficulty with the application of the doctrine. However, when cases arose in which the master did owe an obligation to the servant to do something, there was difficulty in distinguishing the defense of assumption of risk from contributory negligence. That difficulty manifests itself in many of the cases today, and the distinction between the two defenses is often not clearly defined.[4] It is undoubtedly true that the two defenses are distinct in cases involving a relationship of master and servant, even though in some cases the two defenses seem to overlap.[5]

■ The defense of assumption of risk in master and servant cases has been largely abrogated by adoption of workmen's compensation acts.[6] Assumption of risk is abolished entirely as a defense in cases involving the Federal Employers' Liability Act. Contributory negligence may reduce the amount of plaintiff's recovery. In the Federal Safety Appliance Act, on the other hand, both defenses have been entirely abolished. In this state it was held originally that, where an injury is the

---

[2]Cf. Rase v. Minneapolis, St. P. & S. S. M. Ry. Co. 107 Minn. 260, 120 N. W. 360, 21 L.R.A. (N.S.) 138.

[3]35 Am. Jur., Master and Servant, § 299; 3 Labatt, Master and Servant (2 ed.) § 1167; Liptak v. Karsner, 208 Minn. 168, 293 N. W. 612; Restatement, Agency, § 499.

[4]See, Labatt, *The Relation Between Assumption of Risks and Contributory Negligence,* 31 Amer. L. Rev. 667; 35 Am. Jur., Master and Servant, § 295.

[5]Rase v. Minneapolis, St. P. & S. S. M. Ry. Co. 107 Minn. 260, 120 N. W. 360, 21 L.R.A. (N.S.) 138.

[6]See, Prosser, Torts (2 ed.) § 69.

proximate result of the violation of a statute passed for the protection of a workman, the defense of assumption of risk was available unless the statute expressly abolished it. The cases so holding were overruled in Suess v. Arrowhead Steel Products Co. 180 Minn. 21, 230 N. W. 125.[7]

When cases do not come within the Workmen's Compensation Act and there is no statute imposing a duty on the employer for the benefit of the employee, the common law still governs. In such cases, the defense of assumption of risk is still available to the employer.[8] That is the type of case with which we are dealing here.

In this state the doctrine of assumption of risk in master and servant cases rests on contract.[9]

■ It is held in a majority of jurisdictions that, when an employee, having actual or constructive knowledge of the employer's negligence and an appreciation of the dangers inherent in an existing situation, continues in the employment without complaint and without promise on the part of the employer to repair or discontinue such negligence, the employee assumes the risk of the employer's negligence and is by reason of such assumption precluded from holding the employer liable for injuries received as a proximate consequence of the dangers the employer's negligence created or allowed to exist.[10] In amplification of this rule, we find the following statement in 35 Am. Jur., Master and Servant, § 302:

"* * * while the employer is, prima facie, liable to his employee for injuries proximately caused by a breach of the employer's primary duties to the employee, such as a failure to use due care in furnishing a reasonably safe place * * *, the existence of such liability may be rebutted by proof that the servant, with actual or constructive knowledge of the

[7]15 Minn. L. Rev. 121.

[8]Jurovich v. Interstate Iron Co. 181 Minn. 588, 233 N. W. 465; see, Prosser, Torts (2 ed.) § 69, p. 385.

[9]Brown v. Musser-Sauntry Land, Logging & Mfg. Co. 104 Minn. 156, 116 N. W. 218; Liptak v. Karsner, 208 Minn. 168, 293 N. W. 612.

[10]35 Am. Jur., Master and Servant, § 302; 56 C. J. S., Master and Servant, § 393; Liptak v. Karsner, 208 Minn. 168, 293 N. W. 612; Annotation, 28 L.R.A. (N.S.) 1221; 3 Labatt, Master and Servant (2 ed.) § 1194.

employer's violation of duty, and an appreciation of the dangers, continued in the employment without complaint of the defects, and without any promise on the part of the master to remedy them."

■   While it has often been said that the doctrine of assumption of risk is not favored by the courts[11] and the question of whether a party has assumed the risks of a given situation usually is for the jury, unless the evidence is conclusive,[12] it does become a question of law when the evidence is conclusive.

It seems to us that in this case the evidence is so conclusive that it leaves nothing for the jury to pass upon. Plaintiff, by her own testimony, admits that she was familiar with the grounds and knew that there were patches of smooth ice on the driveway as she walked to and from the home to the mailbox. She was the only one who used the driveway for walking. She walked to the mailbox without any difficulty; coming back she walked on a different part of the driveway and stepped on a patch of ice which she knew was there and slipped and fell. Her testimony in that regard is:

"Q.   When did you first become aware of the condition of this driveway as you have described it?

"A.   Well, on the way down I knew there was no sand and I knew it was icy in spots, but I didn't realize how icy, how slippery they were until I fell.

"Q.   Now, for how many days or how long previous to this accident had the driveway been in approximately the same sort of condition as you have described?

"A.   Oh, I would say several days at least."

On cross-examination she admitted that she had lived in Minnesota all her life. She was then asked:

"Q.   You are acquainted with ice and snow and the hazards of walking in this state in the wintertime, aren't you?

"A.   Yes."

_____

[11]Jurovich v. Interstate Iron Co. 181 Minn. 588, 233 N. W. 465.

[12]Rase v. Minneapolis, St. P. & S. S. M. Ry. Co. 107 Minn. 260, 120 N. W. 360, 21 L.R.A. (N.S.) 138.

Finally on cross-examination, she said:

"Q.   And you were watching the driveway as you walked up just before you fell?

"A.   Yes.

"Q.   You were very careful, you were watching where you were walking?

"A.   Yes.

"Q.   And you saw the ice as you walked up the driveway?

"A.   Yes, I did. I didn't know how slippery it was.

"Q.   But you saw the ice, didn't you?

"A.   Yes.

"Q.   And you know ice is slippery?

"A.   Yes.

"Q.   And immediately before you fell you saw the ice that was there?

"A.   Yes, I did."

The only evidence offered to avoid the consequences of these admissions is plaintiff's statement that she did not know how slippery the ice was. In other words, in essence what she says is that she did know that she might fall if she stepped on the ice but now argues that, inasmuch as she did not know how slippery the ice was, a jury question exists as to whether she appreciated the danger of stepping on the ice. Of course, if degrees of slipperiness of ice are to be the criteria of the required minimum knowledge and appreciation of danger, there could never be a case where the evidence would be conclusive. The very idea of ice being slippery implies a risk of falling. Webster's New International Dictionary (2 ed.) (1932) p. 1975, defines "slippery" as "Not affording ground for confidence or trust; * * * Not to be relied upon," among other definitions. In defining "slip" we find: "Act of slipping; as, a *slip* on ice; hence, fig., a sudden mishap * * *." It must follow that if a person knows that ice is slippery he must also know that if he steps on it there is a risk of falling. If he then ventures onto the ice, he assumes that risk and, if he falls, the very thing has happened that was involved in the risk he assumed in stepping on the ice. It is the risk of falling that plaintiff assumed when she stepped on the ice, and she cannot now

be heard to say that even though she assumed that risk she did not expect to fall; therefore, that defendant should be held liable for her injuries.

The facts in this case are indistinguishable from those in Syverson v. Nelson, 245 Minn. 63, 70 N. W. (2d) 880. In that case, plaintiff was an employee of defendant on a farm. He was walking on a cement floor which was subject to overflow by a water system which was slippery when it was wet. While he admitted that he knew all about these conditions, he claimed that it was wetter on the day he fell than on other days and that he did not realize how slippery it was when it was as wet as it was on that day. While recognizing that the question of appreciation of risk usually is a question that is left to the jury, we affirmed the trial court's order granting defendant's motion for a directed verdict on the evidence in that case. In so doing, we said (245 Minn. 68, 70 N. W. [2d] 883):

"Knowledge of the physical characteristics of common substances come to all men of average intelligence in the ordinary course of life. Some of these are that fire will burn; that water will drown; that water makes a floor slippery; and that a human being is liable to slip and fall in slippery places."

The above quotation is supported by a note found in 23 Minn. L. Rev. 650, where, among other things, we find the following statement:

"The ordinary individual ought to be aware of the simple physical characteristics of the more common substances. He is presumed to know that the following substances are slippery: ice, * * *."[13]

In Prosser, Torts (2 ed.) § 55, p. 310, we find the following:

"* * * it is evident that in all such cases an objective standard must be applied, and that the plaintiff cannot be heard to say that he did not comprehend a risk which must have been obvious to him. As in the case of negligence itself, there are certain risks which anyone of adult age must be taken to appreciate: the danger of slipping on ice, of falling through unguarded openings, of lifting heavy objects, of being squeezed in a narrow space, of inflammable liquids, or of unguarded circular saws or similar dangerous machinery. * * *

---

[13]See, also, 4 Labatt, Master and Servant (2 ed.) § 1313.

"Since the basis of assumption of risk is not so much knowledge of the risk as consent to assume it, it is possible for the plaintiff to assume risks of whose specific existence he is not aware. He may, in other words, consent to take his chances as to unknown conditions."

In Syverson v. Nelson, 245 Minn. 68, 70 N. W. (2d) 883, we said also:

"If the servant can see and appreciate the danger as well as the master, he assumes the risk. It is the general rule that a person engaging in any employment assumes the obvious risks ordinarily incident to it. * * *

"Under the doctrine of assumption of risk as applied in this state, a servant assumes not only the risks incident to the employment in which he is engaged, but also such extraordinary risks as he may knowingly and voluntarily encounter. The danger must, however, be known or plainly observable by him. The measure of the servant's duty is that of ordinary observation."

There are other cases in which we have applied the rule that where the knowledge of the servant is as complete as that of the master the doctrine of assumption of risk bars recovery. In Jurovich v. Interstate Iron Co. 181 Minn. 588, 233 N. W. 465, where the employee was held to have assumed the dangers incident to exposing himself to the ill effects of cold water, we said that such hazards were certainly just as apparent to the plaintiff as to the defendant. In Woodring v. Pastoret, 221 Minn. 50, 21 N. W. (2d) 97, plaintiff slipped and fell as she was taking her employer's dog out for its daily airing and exercise. While the decision probably is based on the fact that defendant had no control over the streets in Duluth, we quote with approval a portion of the Jurovich case in affirming a demurrer to plaintiff's complaint. In Liptak v. Karsner, 208 Minn. 168, 169, 293 N. W. 612, 613, we said:

"The danger was as plain to plaintiff as to defendant."

In the case now before us the facts are even stronger in that we need not rely upon any presumption of knowledge that ice is slippery, since plaintiff admits that she knew that the ice was there and knew that ice is slippery.

The trial court, as well as plaintiff, relies for the most part on

Matthiessen v. Adrian, 110 N. Y. S. (2d) 830, affirmed, 281 App. Div. 715, 118 N. Y. S. (2d) 560, affirmed, 306 N. Y. 694, 117 N. E. (2d) 639. The facts in that case are so clearly distinguished from those now before us that the case is of little or no help. In the Matthiessen case, the employer had been advised of the dangerous condition of the premises and had agreed to remedy it. He failed to do so. The New York court recognized the rule that, when the employer is notified of a dangerous condition and promises to do something about it but fails to do so, the employee is not held to have assumed the risks incident to such conditions if he continues to work. The New York court said (110 N. Y. S. [2d] 833, 834):

"* * * To disturb the verdict would seem to disregard the general rule holding a master liable *where he admittedly is notified that his premises or appliances become out of repair* and then fails to take reasonable precautions to make the same safe.

\* \* \* \* \*

"* * * The holding of the jury is to the effect that the plaintiff's continuance to work with her husband under the joint employment agreement, knowing of the icy condition was not sufficient to establish that she assumed the risk; and such holding does not seem improper *in view of the promise made to the joint employee* and in view of the fact that the condition might be remedied by a break in the weather." (Italics supplied.)

The rule applied by the New York court is the exact opposite of the rule that, if the employee is familiar with the existing conditions and continues to work without notice to her employer, she will be held to have assumed the risk incident to such condition. As applied to defective machinery, we have, on a number of occasions, recognized the distinction between these two rules.

In Schlitz v. Pabst Brewing Co. 57 Minn. 303, 305, 59 N. W. 188, we said:

"Both parties, employer and employe, knew equally well the dangerous condition of the wagon, so that, *under ordinary circumstances, it would be a case of the assumption of risk by the employe continuing to use it.*

"But it is a well-settled rule that where the servant, though he knows the dangerous condition of the instrumentality furnished him, is induced to continue its use by the request of the master, and his promise to remedy the defect after complaint made to him by the servant, he may continue such use for a reasonable time for the defect to be remedied without assuming the risk incident to its dangerous condition, unless it be so imminently and immediately dangerous that a man of ordinary prudence would have refused longer to use it." (Italics supplied.)

In Rothenberger v. Northwestern Consol. Milling Co. 57 Minn. 461, 463, 59 N. W. 531, we said:

"It is well settled in this state, as it is elsewhere, that if a servant who has knowledge of defects in the instrumentalities furnished for his use, or in machinery about which he is employed, gives notice thereof to the master, who thereupon promises that the defects shall be remedied, the servant may recover for an injury caused thereby, at least where the master requested or induced the servant to continue in the service, and the injury occurred within the time at which the defects were promised to be remedied, and where the instrumentality or machinery was not so imminently and immediately dangerous that a man of ordinary prudence would have refused longer to use or work about it. *Under such circumstances the risk attendant upon the use of instrumentalities or machinery known by the servant to be dangerously defective is shifted upon the master, he assuming the risk previously borne by the servant.*" (Italics supplied.)

The rule is recognized in Prosser, Torts (2 ed.) § 55, p. 312, where we find the following:

"* * * The rule which was worked out in employment cases is that a workman does not assume the risk of defects or dangerous conditions which the employer has promised to remedy, until so long a time has elapsed without action that he can no longer continue work in reasonable reliance upon such a promise."

The evidence in this case is conclusive that plaintiff walked on the part of the driveway that was safe in going to the mailbox; that on the way back she chose to step on a patch of smooth ice which she

knew was there and which she knew was slippery; that the same icy condition had existed for at least several days, all to her knowledge; and that she had more knowledge of the condition of the driveway than her employer did, yet she did not complain to him or request that he do something about it. Under these circumstances, only one conclusion is possible; namely, that under the applicable law she assumed the risk of falling when she stepped on the patch of ice and, however unfortunate it may seem, she is not permitted to recover for injuries sustained by reason thereof. It follows that defendant is entitled to judgment.

We have not attempted to deal with cases cited which do not involve a master-servant relationship. In such cases there are considerations not involved here. It adds only to confusion to attempt to reconcile them with cases such as we now have before us.

Reversed.