BONNIE LOU HEDGLIN, A MINOR, BY
EDWARD HEDGLIN, HER FATHER AND NATURAL
GUARDIAN, AND ANOTHER v. CHURCH OF ST. PAUL
OF SAUK CENTRE.

158 N. W. (2d) 269.

April 11, 1968—No. 40,829.

*Donohue & Donohue* and *Howard I. Donohue,* for appellant.
*Roger J. Nierengarten,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Rogosheske, and Peterson, JJ.

NELSON, JUSTICE.

The Church of St. Paul of Sauk Centre, defendant-appellant herein, appeals from a judgment of the District Court of Stearns County in favor of plaintiffs, Bonnie Lou Hedglin and Edward Hedglin, her father and natural guardian, entered pursuant to a jury verdict awarding them $3,000 and $377.19 respectively. All references to plaintiff will be to Bonnie Lou Hedglin.

Defendant is a religious corporation and is the owner of St. Paul Catholic Church at Sauk Centre.

Taking, as we must, the evidence in the light most favorable to the verdict, we have these facts:

The injury giving rise to the action herein occurred at about 10:45 a. m. December 8, 1963, when plaintiff, then 16 years old, slipped and fell on the steps of defendant church after attending Sunday services. The testimony of all witnesses, including plaintiff, is that snow fell throughout the day of the accident. Certain exhibits introduced by defendant indicate that within 10 miles of Sauk Centre 4.8 inches of snow fell between 2 p. m. and midnight on the day before the accident and 4.5 inches fell between midnight and 2 p. m. on the day of the accident. The snow was light and wet.

The church has only one entrance, facing south. The steps on which plaintiff slipped lead from it down to the street, there being no other means of exit from the church. Two iron-pipe handrails extend on the sides of the steps from the entrance of the church to the sidewalk below. There are 12 or 14 steps, 12 inches in width, and the whole stairway is 7 feet wide, the handrails being so placed that one ascending or descending the steps can reach one of the rails with a hand.

The janitor of defendant church testified at the trial that he had cleaned and sanded the steps at 4:30 a. m. the day of the accident, as well as during every Mass thereafter on that day. Plaintiff's witnesses, however, testified that there were no signs of any attempt to remove the snow or reduce the slipperiness. Plaintiff testified that she was aware that the steps were slippery when she came out of church, but she did not use the handrail because of the crowd going in and out of the church after 10 o'clock services. Plaintiff slipped on about the third step from the top and fell the rest of the way down the steps, and it was in this fall that she was injured.

Plaintiff's brother, with whom she attended church, said that it had been snowing when he went into church and that it was snowing after services were over and continued some time thereafter. Another witness testified that when she arose at 7 a. m. it was snowing and continued to snow throughout the day. Plaintiff testified that there was an accumula-

tion of about 1½ inches of snow on the steps when she went to church. Her brother testified that the accumulation of snow on the steps might have been that much originally but was packed down. Plaintiff could not say that the steps had not been cleared of snow earlier. Masses on that day were at 6:30, 7:15, 8:30, 10, and 11:15 a. m. The janitor testified that not only did he remove the snow from the steps at 4:30 a. m., but he shoveled them during every Mass. The record indicates that plaintiff had no difficulty walking up the steps and that upon leaving the church she observed the condition of the steps and knew they were slippery, but walked down without using the handrail.

Defendant moved for a directed verdict at the close of the testimony. It assigns as error on the part of the court the denial of this motion and of its motion for judgment notwithstanding the verdict. It contends that the evidence fails to establish that it was negligent.

Plaintiff's claim of negligence appears to be predicated on the sole claim that the steps extending from the sidewalk to the church entrance were not free of snow and ice at the time of the accident and that as a result the steps were in a slippery condition. There is, however, no dispute about the fact that it had been snowing for several hours prior to the accident and that it was snowing when it occurred. Defendant's contention that to keep the steps free of snow during the hours of the snowfall and at the time of the occurrence of the accident was impossible, and that under the circumstances its failure to have the steps free of snow was not negligence, raises the determinative issue in this case.

Defendant cites Mattson v. St. Luke's Hospital, 252 Minn. 230, 89 N. W. (2d) 743, 71 A. L. R. (2d) 422, and Geis v. Hodgman, 255 Minn. 1, 95 N. W. (2d) 311, as controlling on the issues here involved. In the Mattson case the sole question was whether a private hospital, in the discharge of its duty of exercising reasonable care for the safety of an invitee, is permitted as a matter of law—absent extraordinary circumstances—to wait for the end of a freezing rain and sleetstorm, and for a reasonable time thereafter, before removing ice and snow from its entrance steps, landings, and sidewalks which are exposed to the elements. This court said (252 Minn. 233, 89 N. W. [2d] 745, 71 A. L. R. [2d] 425):

"Absent extraordinary circumstances * * * it is the general rule that a business establishment or other inviter may, without violating its duty to exercise reasonable care for the safety of business guests or invitees, await the end of a freezing rain or sleetstorm and a reasonable time thereafter before removing ice and snow from its outside entrance walks, platform, or steps. * * * Reasonable care requires only that the possessor shall remove the ice and snow, or take other appropriate corrective action, within a reasonable time after the storm has abated. The fact that the possessor may have attempted to take corrective measures during the storm's progress does not change the situation even though such measures were temporarily effective. The exercise of reasonable care for the safety of invitees requires neither the impossible nor the impractical * * *."

In Annotation, 71 A. L. R. (2d) 427, § 2, we find this editorial comment: "In most of the cases [involving] injury to a hospital visitor from the allegedly defective condition of the hospital's exterior walks, stairs, or grounds, the courts have treated one coming to a hospital to visit a patient therein as an invitee or business visitor, to whom was owed the exercise of reasonable care to keep the hospital property in reasonably safe condition." It is only reasonable to assume that the church corporation in the instant case would come within the same status or classification as a private hospital so far as the injured person is concerned and that plaintiff constituted an invitee at the time she attended Mass.

It is, of course, elementary that defendant, as the owner and possessor of the premises, was under an affirmative duty to exercise reasonable care in maintaining the premises in a reasonably safe condition for plaintiff, since, as a visitor to defendant church, she occupied the status of an invitee. The duty includes reasonable inspection.[1]

---

[1] On the duty owed business guests or invitees, see Strong v. Shefveland, 249 Minn. 59, 81 N. W. (2d) 247; Anderson v. Winkle, 213 Minn. 77, 5 N. W. (2d) 355; Yeager v. Chapman, 233 Minn. 1, 45 N. W. (2d) 776, 22 A. L. R. (2d) 1260; Prosser, Torts (2 ed.) § 78; 2 Harper & James, The Law of Torts, § 27.12; Prosser, *Business Visitors and Invitees*, 26 Minn. L. Rev. 573; Paton, *Invitees*, 27 Minn. L. Rev. 75.

As in the Mattson case, the sole issue here is what constitutes an exercise of reasonable care as applied to the circumstances of this case. The question is, was defendant church in the discharge of its duty to use reasonable care required to keep the steps and landing of its outside entrance free from ice and in a nonslippery condition during the continuing snowfall, or was it permitted, as a matter of law, to await the end of the storm to remove the snow which had accumulated?

In the Mattson case we held that it would be unreasonable to expect the possessor of premises to remove the freezing precipitation as it falls. We have said that reasonable care requires only that the possessor shall remove the ice and snow or take other appropriate corrective action within a reasonable time after the storm has abated, and the fact that the possessor may have attempted to take corrective measures during the storm's progress does not change the situation even though such measures were temporarily effective.

In adopting that rule, the court referred to what it considered two leading cases. The first, Walker v. The Memorial Hospital, 187 Va. 5, 45 S. E. (2d) 898, involved facts similar to those of the instant case. It held that since the storm had not finally terminated, the exercise of reasonable care no more required defendant to warn of the result of the weather than it did to remedy the result. The other case is Goodman v. Corn Exch. Nat. Bank & Trust Co. 331 Pa. 587, 200 A. 642. In that case, the court observed that it may be stated as a general rule that there is no absolute duty to keep outside steps free from ice and snow at all times; that where the precipitation is recent or continuous, the duty to remove such obstruction as it forms cannot be imposed; and that the dangers arising therefrom are viewed as the normal hazards of life, for which no owner or person in possession of property is held responsible.

As recently as Kiaka v. S. S. Kresge Co. 273 Minn. 278, 280, 141 N. W. (2d) 129, 130, our court reiterated the general principle of the Mattson case, stating:

"* * * [T]he exercise of reasonable care for the safety of invitees requires neither the impossible nor the impractical."

Plaintiffs cite Strong v. Shefveland, 249 Minn. 59, 81 N. W. (2d) 247,

in support of the claim that defendant should have maintained its premises in a reasonably safe condition for use by plaintiff. This case was also cited by plaintiff in the Mattson case and rejected by this court. The Strong case is distinguishable since there, as the court pointed out (249 Minn. 61, 81 N. W. [2d] 249):

"The testimony indicates that at the time of the accident there had been snow on the ground and that paths had become icy for a considerable period of time prior to the date of the accident."

In the instant case there is no evidence that the slippery condition existed prior to the time of the snowfall which began the day before and continued through the day of the accident.

The view taken by this court in the Mattson case was also followed in Sarsfield v. St. Mary's Hospital, 268 Minn. 362, 364, 129 N. W. (2d) 306, 308, where we approved the trial court's charge that—

"* * * only when there are extraordinary circumstances that render the walkway unreasonably dangerous to invitees is a landowner or possessor required to take measures to reduce the slipperiness of his walkways prior to a reasonable time following the cessation of a storm."

We have examined the other cases plaintiffs claim to be controlling and have concluded that they do not apply to the facts of this case. In fact, had defendant been under a duty to have its steps clear of snow, plaintiff's conduct would still bar recovery. As already suggested, plaintiff had, and knew of, a safer, alternative course to take in descending the steps if she desired to take it. She chose not to use one of the handrails.

In Geis v. Hodgman, 255 Minn. 1, 95 N. W. (2d) 311, 312, recovery was denied on the ground:

"The evidence in this case is conclusive that plaintiff, with full knowledge of the existence of ice and an appreciation of the dangers in slipping on it, stepped on a patch of such ice and fell. Under these circumstances she assumed the risk of proceeding as she did."

In Donald v. Moses, 254 Minn. 186, 94 N. W. (2d) 255, 256, we held:

"Where there is a reasonably safe alternative way open, the plaintiff's choice of the dangerous way is a free one and may under such circumstances amount to both contributory negligence and assumption of risk."

In Huyink v. Hart Publications, 212 Minn. 87, 2 N. W. (2d) 552, we held that where a party has two ways to do an act and knows that one is safe and the other dangerous and he elects the dangerous one, he is guilty of contributory negligence as a matter of law because the choice involves an unreasonable exposure to the risk of injury. In the instant case plaintiff admitted that she was familiar with the handrails and chose not to use them. Her descent to the sidewalk would have been safer had she used them, and the choice she did make, involving an unreasonable exposure to the risk of injury, would have been contributory negligence as a matter of law if defendant had had the duty of keeping its steps cleared of snow at the time plaintiff fell.

Defendant's motion for a directed verdict at the close of the testimony should have been granted. Defendant is entitled to a reversal and to have the judgment entered in its favor against the plaintiffs.

Reversed.