# CIRCUIT COURT OF THE CITY OF NORFOLK

Francesca Amos

v.

NationsBank, N.A.

June 3, 1997

Case No. (Law) L96-3545

BY JUDGE CHARLES E. POSTON

On March 21, 1997, in this personal injury action, the jury returned a verdict for the plaintiff. For the reasons stated below, the court grants the defendant's motion to set aside the jury verdict and to enter judgment for the defendant notwithstanding the jury's verdict.

### Facts

The facts are not substantially in dispute and are stated in a light most favorable to the plaintiff. On February 2, 1996, about 1:20 p.m., the plaintiff left her place of employment in the Crestar Bank Building in downtown Norfolk and walked to the NationsBank Center about one block away. The NationsBank Center is a multi-story building to which access is gained by ascending several steps to a pedestal or plaza area and proceeding to the doors to the building. At that time, the plaintiff testified, "It was cold and light drizzle." Amos Transcript, page 7.

The temperature had dropped significantly from the time the plaintiff arrived at work until she began her trip to the NationsBank Center. The plaintiff had no difficulty walking up the steps to the pedestal, and she saw no areas roped off on the stairs nor did she see any warning signs or cones. She also saw no pathways cleared, nor did she see any salt or chemicals on the steps. The pedestal area looked wet, and the plaintiff slipped as she began

walking to the building. This slip caused her to walk more cautiously, and three or four steps later she slipped, fell, and suffered the injuries resulting in this action.

Jeffrey Lawson, a meteorologist, testified for the defense, and his testimony was not contradicted. The evening before, Lawson, who is chief meteorologist for a local television station, had predicted a major winter storm for the area. He remembered the day especially well because he was the only local forecaster who had predicted the storm. The storm he had predicted began about 3:00 a.m. on February 2, 1996, and continued until 2:41 p.m., at which time there was a lull in the storm. Later that night the storm resumed. Lawson described the storm as the "worst ice storm we had in decades ... ." Lawson Transcript at 17:1-2. The best description of the conditions that day was offered by Lawson:

> The temperature cooled below evaporative, and everything we had was starting to turn into a sheet of ice. Typical event you might only have a tenth of an inch. It only takes a tenth of an inch to make it slippery. In this case, we had a significant ice storm. The observation[1] showed it continued to rain, continued to have a temperature below freezing all throughout the morning and all through the early parts of the afternoon.
>
> Eventually — it was foggy as well by the way. It was also quite blustery as the other people have indicated. The exact time to the minute, the 2:50 observation — they reported that it had ended at 2:41. So at 2:41 p.m. is when the storm began to abate — no began to abate, but it went to foggy conditions. It actually picked up later that night and started all over again with a little bit of sleet mixed in with the freezing rain and a significant ice storm that night.
>
> During the day it continued to be freezing rain through about 2:50 in the afternoon.

Lawson Transcript at 14:19-15:15.

On the afternoon of the accident, Lawson personally observed the conditions in downtown Norfolk:

> I spent the entire time driving in, as I did the entire night, looking up at the sky and looking around at the conditions on the ground and

---

[1] NOAA weather report admitted as defendant's exhibit 3.

everything, and it was the exact same downtown, if not even a little bit worse, than it has [sic] been everywhere across the area.

There were significant ice buildups. It was clearly visible from the trees, and it looked like a winter wonderland, sort of a picture postcard, only not with snow but that sort of glistening, which, opaque sheet sort of everywhere.

Lawson Transcript at 22:2-22:12.

There is no doubt that the ice storm occurred as Lawson had predicted and that it was still raging at the time of the plaintiff's fall.

Two witnesses who were responsible for certain janitorial and housekeeping duties for the NationsBank Center testified that they had arrived early that morning because of the storm. They described how they had roped off certain areas of access to the building, cleared pathways through the ice, spread chemicals, and positioned warning devices such as cones. It is clear that NationsBank was taking actions to facilitate entry into the building which was not closed as a result of the storm.

*Law*

Under Virginia Code § 8.01-430, a trial court is empowered in a civil action to set aside a verdict as contrary to or not supported by the evidence and enter final judgment. However, trial courts should only exercise this power when the verdict is plainly wrong or without credible evidence to support it. *Rogers v. Marrow*, 243 Va. 162 (1992). If there is a conflict in the testimony on a material point, or if reasonable men may differ in their conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight of the testimony, the trial judge may not substitute his conclusion for that of the jury merely because he would have voted for a different verdict if he had been on the jury. *Lane v. Scott*, 220 Va. 578 (1979), *cert. denied*, 446 U.S. 986 (1980). Nonetheless, in situations where there has been "a plain deviation from right and justice," a court must not make itself a party to such a wrong by entering judgment upon it. *W. S. Forbes & Co. v. Southern Cotton Oil Co.*, 130 Va. 245, 259 (1921) (quoting *Palmer v. Showalter*, 126 Va. 306, 316 (1919)). The duty to set aside a verdict not justified by the law and the evidence is "just as imperative" as the duty to sustain a proper verdict. *Nicholson v. Garland*, 156 Va. 745, 751 (1931) (quoting *Bohlkin v. Portsmouth*, 146 Va. 340, 348 (1926)).

In the case at bar, the essence of the defendant's argument is that a business has no duty to remove ice and snow until a reasonable time after a storm ends.

The defendant also argues that the fact that its business remained open during the storm and that steps were taken to remove ice and snow does not mean it assumed a duty to keep the ways clear and safe for its invitees.

The general rule applicable is stated in *Walker v. Memorial Hosp.*, 187 Va. 5 (1948), the leading case on this point:

> a business establishment, landlord, carrier, or other inviter, in the absence of unusual circumstances, *is permitted to await the end of [the] storm and reasonable time thereafter* to remove ice and snow from an outdoor entrance, walk, platform, or steps.

*Walker*, 187 Va. at 13 (emphasis added).

Thus, *Walker* establishes that the defendant has no duty to remove ice and snow during the time that the storm is ongoing. The plaintiff's assertion in the present case that there was a conflict in the evidence as to whether the storm was still in progress at the time of her accident can be addressed summarily. The overwhelming evidence presented at trial is conclusive that at the time of the plaintiff's injury, an ice storm was in progress, moisture was falling, and the moisture was freezing on the ground. No reasonable person could conclude otherwise. At the trial, Mr. Lawson, the expert meteorologist, testified that the ice storm during which plaintiff fell began at about 3:00 a.m. and continued until it ceased temporarily at 2:41 p.m., after the plaintiff's accident. *See* Lawson Transcript at 14:23-15:15. The NOAA report for the day of the plaintiff's accident also shows that it rained continuously from 1:50 a.m. to 2:50 p.m. *See* Defendant's Exhibit 3. Not a single witness testified that it was not raining at the time of the plaintiff's fall. Most importantly, the plaintiff herself testified that at the time of her fall, "It was cold and light drizzle." Amos Transcript at 7:23-8:1. She is, of course, bound by her own testimony under the rule stated in *Massie v. Firmstone*, 134 Va. 450, 462 (1922). As the court in *Massie* explained:

> As a general rule when two or more witnesses introduced by a party litigant vary in their statements of fact, such party has the right to ask the court or jury to accept as true the statements most favorable to him ... . This is not true, however, as to testimony which he gives himself. No litigant can successfully ask a court or jury to believe that he has not told the truth. His statements of fact and the necessary inferences therefrom are binding upon him. He cannot be heard to ask that his case be made stronger than he makes it, where, as here, it depends upon facts within his own knowledge and as to which he has testified.

*Massie v. Firmstone*, 134 Va. 450, 462 (1922).

The plaintiff seeks to avoid the effect of her own testimony by arguing that a "light drizzle" does not fall within the definition of "storm" for purposes of the *Walker* rule. However, in the Virginia Supreme Court's most recent reaffirmation of *Walker*, the court concluded that the *Walker* rule applies anytime that moisture is falling and freezing on the ground. As stated by the court:

> In our view ... the landlord had no duty to remove the ice *during the time moisture was falling and freezing on the ground* ... .

*FAD Ltd. Partnership v. Feagley*, 237 Va. 413, 415 (1989) (emphasis added).

It follows, then, that the defendant had no duty *at the time of the plaintiff's injury* to remove the ice on the pedestal to the building. The Supreme Court in *Walker* explained the justification for this conclusion:

> The hazardous condition which resulted in plaintiff's unfortunate injury was caused solely by the usual and natural action of the elements. It rendered slippery, not only the defendant's premises, but also all other exposed places within the city. Every pedestrian who ventures out at such times knows he is risking the chance of a fall and of a possible serious injury. It is a hazard to which nature subjects all alike, him who undertakes to remove or correct it as well as the one for whose protection the risk of removal or correction is incurred. It would be an unreasonable rule which would impose upon an inviter the necessity of repeated excursions into the storm, with the attendant risks of exposure and injury to himself, in order to relieve the invitee of all risk from this natural hazard. Such a burden would place the inviter practically in the role of an insurer of the safety of the invitee.

*Walker* at 22, 23.

Neither *Walker* nor its progeny directly addresses whether the defendant's action in attempting to remove the ice from the paths to the building created a legal duty to the plaintiff which it breached. Nevertheless, in *Walker*, the fact that snow had been swept to the side of the hospital steps during the storm had no impact on the court's decision. *Walker* at 9. Moreover, this "assumed duty" argument has been rejected by courts in other jurisdictions applying the *Walker* rule. For instance, in *Mattson v. St. Luke's Hosp.*, 89 N.W.2d 743

(Minn. 1958), the Supreme Court of Minnesota, citing *Walker* as authority, held:

> Reasonable care requires only that the possessor shall remove the ice and snow, or take other appropriate corrective action, within a reasonable time after the storm has abated. *The fact that the possessor may have attempted to take corrective measures during the storm's progress does not change the situation even though such measures were temporarily effective.*

*Mattson*, 89 N.W.2d 743, 745 (Minn. 1958) (emphasis supplied); *accord, Hedglin v. Church of St. Paul*, 158 N.W.2d 269 (Minn. 1968); *Agnew v. Dillon's, Inc.*, 822 P.2d 1049 (Kan. App. 1991).

In the present case, there is absolutely no evidence which could be construed to indicate that the defendant's efforts to ameliorate the icy conditions added a new element of danger or hazard other than the one caused by the natural forces of the storm. Indeed, the plaintiff's testimony suggests that the area where she fell had not even been treated by the defendant's maintenance personnel. *See* Amos Transcript at 9:1-10:2. The court concludes that the defendant's attempts to remove the ice from the paths to the building created no additional legal duty to the plaintiff.

The court, therefore, concludes that the defendant's motion to set aside the jury's verdict and for judgment notwithstanding the verdict should be granted.